TOWN OF STRATFORD *v.* LOCAL 134, IFPTE, ET AL.
(12779)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and M. HENNESSEY, Js.

Argued October 8—decision released December 16, 1986

*Rod Farrell,* with whom were *Anthony M. Guerrera,* and, on the brief, *Richard P. Gilardi,* town attorney, for the appellant (plaintiff).

*Donald J. Deneen,* for the appellee (named defendant).

SHEA, J. This is an appeal from the judgment of the Superior Court confirming an arbitration award and concomitantly denying an application to vacate the award. The plaintiff, the town of Stratford, attacks on constitutional and public policy grounds the validity of a provision in its collective bargaining agreement with the named defendant, Local 134, International Federation of Professional and Technical Engineers, under which the municipality must provide all members of the bargaining unit with hypertension or heart disease benefits mandated for municipal fire or police personnel under General Statutes § 7-433c. The plaintiff asserts additionally that the trial court erred in denying its application to vacate the arbitration award because the failure of the arbitration panel to address the constitutional and policy issues rendered the award not "mutual, final and definite," as required by General Statutes § 52-418. We conclude that neither the challenged bargaining agreement provision nor the contested award violates public policy or any provision of our state constitution.

The parties stipulated to the facts. The defendant Warren Johns began working for the plaintiff in the public works department in 1971. At that time Johns passed a physical examination, indicating that he was then free from heart disease. In the years 1975 through

1977, however, he suffered a series of heart attacks, which culminated in bypass surgery in October, 1977. In 1978 Johns applied to the plaintiff for heart disease benefits, claiming coverage under article XII, § 3, of the collective bargaining agreement between the plaintiff and the defendant union.[1] That portion of the agreement extends to all members of Local 134 the hypertension and heart disease benefits mandated for municipal fire or police department employees under General Statutes § 7-433c.[2] The plaintiff terminated Johns' employment without paying him such benefits.

[1] Article XII, § 3, provides: "PENSIONS . . . . Effective April 1, 1974, the Municipality shall provide all members of the bargaining unit with the hypertension or heart disease benefits mandated for municipal fire and police personnel under 1971 P.A. 524 under the same terms and conditions as set forth in said Public Act; provided, however, that any new employee hired on or after November 1, 1978, shall not be eligible for hypertension or heart disease benefits."

Because Johns was over forty-five years old when he began working for the plaintiff, he was ineligible to participate in the town's ordinary retirement plan. See Stratford Town Code, "Retirement Plan for Employees of the Town of Stratford," § 2, as amended by Appendix D.

[2] General Statutes § 7-433c provides: "BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total

Johns filed a grievance with the personnel appeals board for the town of Stratford, which the board denied. Johns then sought a declaratory judgment in the Superior Court. The court, *Saden, J.,* dismissed the action because the parties had consented, under the terms of their collective bargaining agreement, to submit questions of contract interpretation to the state board of mediation and arbitration.[3] In the arbitration proceedings that followed the plaintiff argued both that the bargaining agreement should be interpreted to preclude Johns' recovery, and that a contrary inter-

---

or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

Although Johns did not show that he had contracted heart disease as a result of his employment, § 7-433c does not impose such a condition precedent on claimants.

[3] Article XVI of the collective bargaining agreement provides in pertinent part: *"Section 1.* For the purpose of this Agreement, a 'Grievance' is defined as any dispute between the Municipality and the Association, or between the Municipality and any employee group of employees concerning the interpretation, application [or] violation of the provisions of

pretation would render the provision unconstitutional and contrary to public policy. The arbitration panel interpreted the contract provision to afford Johns the payments he sought, but declined to discuss the constitutional and policy issues because "such matters are outside the jurisdiction of this arbitration panel."[4]

The Superior Court, *Gerety, J.*, granted the defendants' application to confirm the arbitration award and denied the plaintiff's opposing application to vacate, which had been filed pursuant to General Statutes §§ 52-417 and 52-418 respectively.[5] In this appeal the

this Agreement. No matter shall be subject to grievance unless taken up within fifteen (15) working days of its most recent occurrence. . . . *Section 3. . . . Step 2. . . .* C. If such grievance is not resolved to the satisfaction of the Association by the Town Manager or his designated representative within seven (7) working days after such [parties meet], the Association may within ten (10) working days thereafter submit the dispute to the State Board of Mediation and Arbitration to provide arbitration service. The decision of the Arbitration panel shall be final and binding on both parties."

[4] The panel made the following award: "The Town of Stratford did violate Section 3 of Article XII by refusing to pay the grievant, Warren Johns, compensation in the same amount and in the same manner as that provided under Chapter 568 in accordance with the provisions of Section 7-433c of the Connecticut General Statutes. The Town shall forthwith make said payments to the grievant. There is no award of interest or attorneys' fees rendered at this time; however, the Board of Mediation and Arbitration shall retain jurisdiction of this case and in the event the case is returned for other reasons, the matter of interest and attorneys' fees may be considered at that time."

[5] General Statutes § 52-417 provides: "APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

General Statutes (Rev. to 1982) § 52-418 provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a contro-

plaintiff claims the trial court erred in concluding (1) that the award, which addressed only the limited issue submitted to the arbitration panel,[6] was mutual, final and definite, and (2) that the plaintiff was precluded from litigating the constitutional and policy aspects of article XII, § 3, of the collective bargaining agreement. Presupposing that its constitutional and policy claims are reviewable, the plaintiff further asserts (3) that the challenged contract provision violates article first, § 1, of our state constitution by creating a class preference,[7] and (4) that the contract provision contravenes public policy by granting public works employees a special bonus.

versy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

[6] The submitted issue read: "Did the Town of Stratford violate Article XII, Section 3, by refusing to pay the grievant, Warren Johns, compensation in the same amount and in the same manner as that provided under Chapter 568 in accordance with the provisions of Section 7-433c of the Connecticut General Statutes? If so, what shall be the remedy?"

[7] Article first, § 1, of our state constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

The plaintiff also asserts that the contested provision violates the equal protection clause of the fourteenth amendment to the United States constitution. This court has repeatedly stated that, in addition to article first, § 20; see *Laurel, Inc.* v. *Commissioner of Transportation,* 173 Conn. 220, 223 n.1, 377 A.2d 296 (1977); article first, § 1, of our constitution has a meaning equivalent to that of the clause of the fourteenth amendment to the federal constitution that prohibits the states from denying to any person the equal protection of the laws. E.g., *Leech* v. *Veterans' Bonus Divi-*

## I

We first reject the plaintiff's contention that because the arbitrators refused to consider the constitutional issue their award was not mutual, final and definite, and, therefore, ought to have been vacated pursuant to General Statutes § 52-418 (d). We conclude, nevertheless, that the factors enumerated in § 52-418, each of which, if found, would require that an arbitration award be vacated, are not exhaustive and consequently do not in all instances limit the scope of judicial review of such awards.

### A

It is axiomatic in this jurisdiction that, when an award is challenged pursuant to General Statutes § 52-418 (d) on the ground that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award was not made, the reviewing court is properly limited to a comparison of the award with the submission. E.g., *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983); *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 23, 453 A.2d 1158 (1983); *Trumbull* v. *Trumbull Police Local 1745,* 1 Conn. App. 207, 212, 470 A.2d 1219 (1984). The award will not be vacated under § 52-418 (d) if it conforms to the submission, and the award need contain no more than the actual decision of the arbitrators. *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 589, 392 A.2d 461 (1978).

*sion Appeals Board,* 179 Conn. 311, 319, 426 A.2d 289 (1979); *Laurel, Inc.* v. *Commissioner of Transportation,* supra, 222–23; *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 (1975); *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702 (1947). Because the latter claim adds nothing to the former, we limit ourselves to the argument asserted under the Connecticut constitution. *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 119 n.3, 355 A.2d 72 (1974); *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 105–106, 90 A.2d 862 (1952).

The issue submitted to the arbitration panel in the present case was whether the plaintiff had violated the labor contract in refusing to pay Johns the benefits he sought, and, if so, what the remedy should be. In their award the arbitrators answered that the plaintiff had violated the contract, and accordingly ordered it to make remedial payments. It is clear, therefore, that the award conformed to the submission. The award was dispositive of the dispute the parties had submitted to the panel. Because the submission, containing no limiting or conditional language, was unrestricted, the award was final and binding and not reviewable for errors of law or fact. See, e.g., *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 626–27, 509 A.2d 467 (1986); *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 683, 427 A.2d 859 (1980). Finally, the award was definite in its terms. We conclude, therefore, that the arbitrators did not imperfectly execute their powers within the meaning of § 52-418 (d).

## B

The plaintiff contends that it was reversible error for the trial court to deny the plaintiff an opportunity to litigate the constitutional and public policy aspects of the contract provision underlying the arbitrators' award. Our response is that the trial court, however succinctly, did address and dispose of those issues.[8] We next consider whether judicial review of the constitutional and policy claims raised by the plaintiff is permissible.

---

[8] In its memorandum of decision the trial court stated that although considerations of "peculiar occupational hazard and the promotion of public safety," which are set forth in General Statutes § 7-433c and which enabled that statute to withstand constitutional attack; *Grover* v. *Manchester,* 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975); seem lacking in the present case, the benefits claimed "are not statutory but contractual, agreed upon by the parties in arms length bargaining." Therefore, said the court, "there is no creation of any class by the government and no grant of exclusive public emoluments or privileges."

We have said that "[t]he right to review an arbitration award is wholly encompassed within the parameters of § 52-418." *Carroll* v. *Aetna Casualty & Surety Co.*, supra, 22. Moreover, we have implied that in consensual arbitration, as opposed to arbitration made compulsory by statute, the parties can be deemed to have waived their right to challenge any constitutional infringement that the award may entail. *Carofano* v. *Bridgeport*, 196 Conn. 623, 637–38, 495 A.2d 1011 (1985). In cases in which the parties have bargained for and agreed to an arbitration procedure, this court's respect for the autonomy of that process has motivated us to recognize such a notion of waiver. See *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, 168 Conn. 54, 62, 357 A.2d 466 (1975); cf. *Carofano* v. *Bridgeport*, supra (compulsory arbitration).

Arbitration in the present case was a creature of the parties' agreement and not mandated by legislative enactment. Nevertheless, there are compelling reasons for considering the merits of the plaintiff's constitutional and policy claims. Our concern is not with whether the arbitrators have properly construed the collective bargaining agreement, but only with whether the agreement, and, a fortiori, the arbitration award itself, is capable of being enforced. See *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 196 n.6, 425 A.2d 1247 (1979). " 'Just as private parties cannot expect a court to enforce a contract between them to engage in conduct which is illegal or otherwise contrary to public policy, they cannot expect an intervening arbitral award approving (or ordering) that conduct to receive judicial endorsement.' Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining (1976) p. 593." *Board of Trustees* v. *Federation of Technical College Teachers*, supra, 195. Furthermore, when an arbitration panel declines to hear constitutional claims on the basis of this court's

decision in *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 464 A.2d 785 (1983), aff'd, *Estate of Thornton* v. *Caldor, Inc.,* 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985),[9] the parties cannot reasonably be deemed to have waived their rights to make those claims.

In the present case the plaintiff did raise its constitutional and policy claims in its brief before the state board of mediation and arbitration. The defendants responded in their brief that our holding in *Caldor, Inc.,* precluded arbitral consideration of those claims. The parties may have felt that it would have been futile formally to submit such issues to the arbitration panel, because this court in *Caldor, Inc.,* had upheld the panel's refusal to consider a constitutional question clearly included within the unrestricted submission. In any event, the arbitrators in the present case agreed that policy matters as well as constitutional issues were not within their jurisdiction. Because the parties' submission did not include such matters, we need not determine whether the panel correctly construed our decision in *Caldor, Inc.,* which removed issues concerning the constitutional validity of a statute from the arbitration sphere, to apply also to issues involving public policy as expressed in common law or statute. We conclude, however, that the parties in this case have not waived their right to challenge article XII, § 3, of the collective bargaining agreement on constitutional and policy grounds, and that judicial review in such a circumstance extends beyond the parameters of General Statutes § 52-418.

[9] In *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd, *Estate of Thornton* v. *Caldor, Inc.,* 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985), this court held that the state board of mediation and arbitration, as an administrative agency, has not been granted the authority to consider constitutional issues. That we "reserve[d] for another day the extent to which an arbitrator may have authority to determine constitutional questions . . . which do not attack a statute as being unconstitutional on its face"; id., 345 n.6; does not compel us to find a waiver in the present case.

## II

We proceed to review the merits of the plaintiff's constitutional and policy claims. The plaintiff contends that article XII, § 3, of the collective bargaining agreement (1) creates a class preference in violation of article first, § 1, of our state constitution, which provides in part that "no man or set of men are entitled to exclusive public emoluments or privileges from the community," and (2) grants a special bonus to public works employees such as the defendant Johns in contravention of public policy. We reject both of these contentions.

### A

Article first, § 1, of the constitution of Connecticut "prohibits the adoption of legislation that has no public purpose but operates to confer private gain on an individual or group. *Tough* v. *Ives,* 162 Conn. 274, 292–93, 294 A.2d 67 (1972); *Lyman* v. *Adorno,* 133 Conn. 511, 515–16, 52 A.2d 702 (1947). Where, however, the statute does serve a public purpose, the legislature may constitutionally differentiate between classes of persons, so long as the legislative classification bears a rational relationship to the public purpose sought to be served. *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 315, 417 A.2d 343 (1979); *Tough* v. *Ives,* supra; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862 (1952)." *Beccia* v. *Waterbury,* 192 Conn. 127, 134, 470 A.2d 1202 (1984).

In *Grover* v. *Manchester,* 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975), this court upheld the constitutional validity of General Statutes § 7-433c, the statute incorporated into the contract provision at issue in the present case. We said that § 7-433c does not create a class preference in violation of § 1 of article first of our state con-

stitution because providing an inducement for persons to seek jobs with police and fire departments is a proper public purpose, and because "the legislature took into consideration the peculiar problems and unusual risks attendant upon these occupations in determining that they properly occupy a different status from other municipal employees."[10] *Grover* v. *Manchester,* supra; see also *Pyne* v. *New Haven,* 177 Conn. 456, 460–61, 418 A.2d 899 (1979). Because, as the trial court stated, the benefits claimed in the present case are not mandated by statute but were agreed upon by the parties in arms length bargaining, we need not determine whether members of Local 134, the defendant Johns' bargaining unit, are employed in extra risk occupations comparable to those of police and fire department personnel that would justify their statutory entitlement to such benefits.

In *Grover* v. *Manchester,* supra, 88, we termed the benefits conferred by § 7-433c "special compensation." As such, they are indubitably an appropriate subject of collective bargaining between a municipal employer and a designated employee organization. Under § 7-469 of the General Statutes, such parties have a duty to

---

[10] In *Grover* v. *Manchester,* 168 Conn. 84, 88, 357 A.2d 922 (1975), we also rejected the contention that the financial obligation that § 7-433c imposes on towns deprives towns of property without due process of law. We said that § 7-433c is free from the infirmity of a predecessor statute, General Statutes § 7-433a, which we declared unconstitutional in *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318 (1971), because it raised a conclusive presumption that hypertension or heart disease suffered by a fire department or police department employee whose physical examination on entry into the service had failed to reveal any evidence of such an impairment was a personal injury that arose out of and in the course of his employment. We note that a 1974 amendment to the Stratford Town Code, "Retirement Plan for Employees of the Town of Stratford," § 3 (2), which provides in part that "[i]n the case of firemen and policemen and all members of the Pension Plan, disablement due to hypertension or heart disease shall be conclusively presumed to be disability incurred in the line of duty," is not at issue today. There is no claim of a necessary link between this amendment and article XII, § 3, of the collective bargaining agreement.

bargain collectively "with respect to wages, hours and other conditions of employment," as set forth in General Statutes § 7-470 (c). See *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559, 370 A.2d 1070 (1976). We have often noted that the language of the Municipal Employee Relations Act; General Statutes §§ 7-467 through 7-477; and of the National Labor Relations Act; 29 U.S.C. §§ 151 through 161; "is essentially the same." *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 354, 402 A.2d 332 (1978). Therefore, " 'the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own acts.' *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 579, 295 A.2d 526 [1972], and cases cited." *Winchester* v. *Connecticut State Board of Labor Relations,* supra.

In *Inland Steel Co.* v. *National Labor Relations Board,* 170 F.2d 247 (7th Cir.), cert. denied, 336 U.S. 960, 69 S. Ct. 887, 93 L. Ed. 1112 (1949), the court construed the terms "wages" and "other conditions of employment," as found in then § 9 (a) of the National Labor Relations Act. The court agreed with the National Labor Relations Board that "the benefits accruing to an employee by reason of a retirement or pension plan are encompassed in both categories," that the term "wages" "must be construed to include emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship," and that "[r]ealistically viewed, this type of wage enhancement or increase, no less than any other, becomes an integral part of the entire wage structure . . . ." Id., 250–51.

We conclude that the "special compensation" represented by the hypertension and heart disease benefits presently at issue is certainly within the realm of acceptable, if not mandatory, bargaining subjects. Fur-

thermore, each bargaining unit has a right individually to dicker over contract terms through untrammeled bargaining. See generally *Local 1219* v. *Connecticut Labor Relations Board,* 171 Conn. 342, 370 A.2d 952 (1976). We consequently agree with the trial court that because the present disability benefits would clearly have been permissible if spelled out in detail in the parties' agreement without reference to § 7-433c, "there would appear to be no reason why they might not be described in the shorthand manner employed here." We hold, therefore, that article XII, § 3, of the collective bargaining agreement does not create a class preference in violation of article first, § 1, of our state constitution.

B

Finally, the plaintiff contends that the contract provision it challenges grants a special bonus to public works employees in contravention of public policy. The plaintiff's policy claim can be disposed of largely on the basis of what has already been said. Although the plaintiff contends that the arbitrators "exceeded their powers" in violation of § 52-418 (d) by rendering a decision that contravenes public policy, we reject this as the basis of our review, noting, once again, that the arbitration award conformed to the parties' submission. We proceed to review the policy claim on grounds independent of § 52-418.

As is the case with respect to contracts generally, the judiciary's power to enforce the terms of a collective bargaining agreement is at all times exercised subject to the restrictions and limitations of public policy as manifested in constitutions, statutes and applicable legal precedents. See generally *Hurd* v. *Hodge,* 334 U.S. 24, 34–35, 68 S. Ct. 847, 92 L. Ed. 1187 (1948); *Muschany* v. *United States,* 324 U.S. 49, 64–68, 65 S. Ct. 442, 89 L. Ed. 744 (1945); *Avco Corporation* v.

*Preteska,* 22 Conn. Sup. 475, 480–81, 174 A.2d 684 (1961). "Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power." *Hurd* v. *Hodge,* supra, 35. "As the term 'public policy' is vague, [however,] there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." *Muschany* v. *United States,* supra, 66.

We have made it clear today that article XII, § 3, of the collective bargaining agreement does not violate the equal protection policy against the governmental creation of class preferences underlying article first, § 1, of our state constitution. We now add that § 7-433c, which recites that one of the purposes for its enactment was to "act as an inducement in attracting and securing persons" for employment in police and fire departments nowhere indicates that the benefits it mandates shall not be available by consent of the parties to other municipal employees. We conclude that the purpose of § 7-433c is not to remove these benefits from the realm of arms length collective bargaining, but merely to ensure that they are provided for members of police and fire departments, even where their municipal employers object. Therefore, § 7-433c does not manifest a policy limitation that would render the challenged contract provision unenforceable. Nor do we find any such limitation in our case law.

Finally, we agree with the defendants that the most compelling policy considerations relevant to the present case weigh in favor of untrammeled bargaining over contract terms. "In the federal sector it has been said that the purpose of the NLRA is to seek the peaceful adjustment of labor-management disputes as a substitute for industrial strife and the promotion of industrial stabilization through the collective bargaining

agreement. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 [1960]. This is also the essential thrust of our State Labor Relations Act and the [Municipal Employee Relations Act]." *Winchester* v. *Connecticut State Board of Labor Relations,* supra, 356. Our conclusion is that neither article XII, § 3, of the parties' collective bargaining agreement nor the arbitration panel's award contravenes public policy.

There is no error.

In this opinion the other justices concurred.