## STATE OF CONNECTICUT *v.* COUNCIL 4, AFSCME (10582)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued February 21—decision released May 26, 1992

*Barbara J. Collins,* for the appellant (defendant).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellee (plaintiff).

HEIMAN, J. The defendant, Council 4 of the American Federation of State, County and Municipal Employees, appeals from the trial court's judgment vacating an arbitration award in favor of Phillip Beaudry, one of its members. The defendant claims that the trial court improperly (1) vacated the award on public policy grounds, (2) reviewed the merits of the issues submitted to arbitration when the issue of arbitrability was not raised by the plaintiff, (3) vacated the award even though it conformed to the submission, and (4) vacated the award on the ground of the indefiniteness of the remedy even though the submission did not restrict the arbitrator's choice of remedy. We affirm the trial court's judgment.

The pertinent facts may be summarized as follows. The plaintiff state of Connecticut and the defendant union entered into a collective bargaining agreement that was effective from July 1, 1988, to June 30, 1991. Beaudry, who was employed by the department of income maintenance as an eligibility technician, was a member of the defendant bargaining unit.

Beaudry's employment was characterized by a series of lengthy absences caused by a psychiatric disorder. On November 27, 1989, he returned to work part-time after a nearly three month leave. Shortly thereafter, while training to operate the department's computer system, Beaudry secretly created a false case file naming himself as the recipient of welfare benefits. From December 12, 1989, until some time in February, 1990, Beaudry cashed approximately $1640 in public assistance checks he received as a result of the false case file. On March 9, 1990, Beaudry gave the Connecticut state police a written statement admitting that he had received and cashed the checks.[1]

---

[1] As a result of the state police investigation, Beaudry was arrested and subsequently admitted into the pretrial program of accelerated rehabilita-

The plaintiff discharged Beaudry effective March 28, 1990, for misuse of state funds, a legitimate ground for dismissal under state personnel regulations. See Regs., Conn. State Agencies § 5-240-5a. On April 26, 1990, the defendant filed a grievance under the parties' collective bargaining agreement. After a hearing on June 21, 1990, a hearing officer found that the plaintiff discharged Beaudry for misuse of state funds, which constituted "just cause" under the collective bargaining agreement.[2] The defendant next demanded arbitration in accordance with the collective bargaining agreement. The parties submitted the following questions for the arbitrator's consideration: "Was the Grievant, Phillip Beaudry, dismissed for just cause? If not, what shall the remedy be?"

At the arbitration hearing, the defendant did not dispute that Beaudry wrongfully acquired state moneys. The defendant contended that Beaudry was not discharged for just cause because his acts were not volitional, but rather were caused by an incapacitating mental disorder that the plaintiff knew about when it fired him. The defendant argued that because Beaudry was a disabled employee, his discharge violated General Statutes § 5-244.[3] It argued further

---

tion for a period of two years. See General Statutes § 54-56e. As a condition of granting the application for accelerated rehabilitation, Beaudry was required to reimburse the state for the moneys taken and to remain under psychiatric supervision. Beaudry repaid the state $1614 on or about April 16, 1990.

[2] Article 16, § 1, of the parties' collective bargaining agreement provides: "No permanent employee who has satisfactorily completed the working test period shall be demoted, suspended or dismissed except for just cause. Just cause may include but is not necessarily restricted to incompetency, inefficiency, neglect of duty, misconduct or insubordination."

[3] General Statutes § 5-244 provides: "When an employee has become physically or mentally incapable of, or unfit for, the efficient performance of the duties of his position, by reason of infirmities due to advanced age or other disability, the appointing authority shall recommend to the commissioner of administrative services that the employee be transferred to less arduous duties or separated from state service in good standing."

that Beaudry's discharge violated General Statutes § 46a-60 (a) (1).[4]

The arbitrator found that although Beaudry's actions constituted "just cause for discharge, absent clear evidence of mitigatory factors of great weight," the circumstances of this case did not amount to just cause because Beaudry's "acts of misconduct flowed out of, or were caused by, his mental illness, albeit episodic in nature" and "were not willful or volitional or within his capacity to control." On the basis of these findings, the arbitrator awarded Beaudry reinstatement, back pay, seniority and benefits and reimbursement for those medical bills paid by Beaudry that would have been paid by the plaintiff had Beaudry not been discharged. The arbitrator allowed the plaintiff to deduct, however, an amount equal to any earnings, welfare payments and unemployment payments received by Beaudry as well as an amount reflecting the working days Beaudry spent in the hospital between March 28, 1990, and the date of his reinstatement. It further allowed the plaintiff to deduct, as a disciplinary suspension, a sum equal to sixty days pay. The arbitrator awarded Beaudry interest on the aforementioned award equal to "eleven (11%) percent per annum . . . until March 31, 1991; and ten (10%) percent per annum, both as prescribed by the National Labor Relations Board when directing reinstatement of wrongfully discharged employees." Finally, the arbitrator ordered the matter remanded to the parties to structure a job for Beaudry that would ensure that his "capabilities and experience are utilized as fully as possible and that he receives proper com-

[4] General Statutes § 46a-60 (a) provides in pertinent part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or by his agent, except in the case of a bona fide occupational qualification or need . . . to discharge from employment any individual . . . because of the individual's . . . present or past history of mental disorder . . . ."

pensation, while at the same time assuring, to the maximum degree possible, that his assignment and duties will not put him in a position to harm clients, [the department], fellow employees, himself or the state."

The plaintiff filed an application to vacate the arbitration award in the Superior Court. See General Statutes § 52-418. The trial court found that (1) Beaudry was discharged for just cause, (2) the arbitration award violated Connecticut's public policy of not rewarding theft from the state, (3) the award was too indefinite with respect to the plaintiff's obligation to structure a new position for Beaudry, and (4) the award of 11 percent interest violated General Statutes § 37-3a. Accordingly, the trial court rendered judgment vacating the arbitration award.

I

The defendant claims that the trial court improperly vacated the arbitration award on public policy grounds because the trial court was empowered to review only whether the award conformed to the parties' submission. We disagree.

General Statutes § 52-418 (a) provides in pertinent part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers . . . ." The trial court's analysis under this provision ordinarily is limited to whether the arbitration award conformed to the submission. *East Haven* v. *AFSCME, Council 15, Local 1662,* 212 Conn. 368, 371, 561 A.2d 1388 (1989); *Malecki* v. *Burnham,* 181 Conn. 211, 213, 435 A.2d 13 (1980); *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.,* 5 Conn. App. 61, 65, 496 A.2d 539 (1985). Where the award is challenged as repugnant to the public policy of this state, however, the statute allows our courts to

vacate the award even if it conforms to the submission. *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 339, 555 A.2d 406 (1989); *State* v. *Connecticut Council 4, CEU, AFSCME,* 7 Conn. App. 286, 290, 508 A.2d 80 (1986); see also *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 416, 544 A.2d 186 (1988); *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 590–91, 519 A.2d 1 (1986). Further, the parties' collective bargaining agreement explicitly provides for judicial review of the award in light of public policy considerations.[5]

A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect " 'conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them.' " *Watertown Police Union Local 541* v. *Watertown,* supra, 339–40; *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 195, 425 A.2d 1247 (1979); *Stamford* v. *Stamford Police Assn.,* 14 Conn. App. 257, 259, 540 A.2d 400 (1988). "[T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed pub-

[5] Article 15, § 9 (c), of the parties' collective bargaining agreement provides in pertinent part: "The arbitrator's decision shall be final and binding on the parties in accordance with Connecticut General Statutes Section 52-418, provided, however, neither the submission of questions of arbitrability to any arbitrator in the first instance nor any voluntary submission shall be deemed to diminish the scope of judicial review over arbitral awards, including awards on arbitrability, *nor to restrict the authority of a court of competent jurisdiction to construe any such award as contravening the public interest.*" (Emphasis added.)

lic interests. . . ." (Citations omitted; internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown,* supra, 340. In undertaking public policy review of an arbitration award, we are not "concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." *Board of Trustees* v. *Federation of Technical College Teachers,* supra.

This state's compelling public policy of not tolerating the knowing misappropriation of state funds by state officials or employees cannot be disputed. General Statutes § 53a-119 (6), which explicitly proscribes such conduct, represents an unequivocal legislative articulation of this policy. The public policy of discouraging fraud generally is firmly rooted in our common law as well. See *Broome* v. *Beers,* 6 Conn. 198, 210–12 (1826); *Schmidt* v. *Yardney Electric Corporation,* 4 Conn. App. 69, 74, 492 A.2d 512 (1985).

The trial court properly found that the arbitration award contravened Connecticut's public policy of not countenancing the knowing misappropriation of state moneys by state officials or employees.[6] The parties "cannot expect any arbitration award which condones illegal payment or contravenes public policy to receive judicial endorsement." *State* v. *R.A. Civitello Co.,* 6 Conn. App. 438, 442, 505 A.2d 1277, cert. denied, 199 Conn. 810, 508 A.2d 770 (1986).

II

The defendant next claims that the trial court improperly vacated the arbitration award as contrary to public policy because the public policy of discouraging discrimination against the mentally ill outweighs the

---

[6] The arbitrator found only that Beaudry's acts of misconduct were not volitional. He did not find that Beaudry's acts were not performed knowingly.

public policy of not rewarding state officials and employees who knowingly misappropriate state funds.

The defendant contends initially that the trial court failed to consider the public policy of discouraging discrimination against the mentally ill. The trial court's memorandum makes clear, however, that it was well aware that the arbitrator determined that just cause to discharge Beaudry did not exist because Beaudry's psychiatric disorder rendered his acts of misconduct nonvolitional. The trial court nonetheless concluded that our state's policy of not tolerating embezzlement by state employees required it to vacate the arbitration award. We cannot say that the trial court's conclusion was unreasonable. Although the arbitrator found that Beaudry's mental illness caused him to misappropriate funds, it did not find that Beaudry's discharge was motivated by an intent to discriminate against the mentally ill. Under the circumstances of this case, the trial court reasonably could have concluded that, even accepting the arbitrator's factual findings, the arbitral award's contribution to the policy of minimizing discrimination against the mentally ill; see Conn. Const., art. I, § 20, as amended by article XXI of the amendments; did not outweigh the damaging consequences to the concomitant policy goal of refusing to countenance the knowing misappropriation of state moneys.

In light of our disposition of these issues, we need not consider the remaining issues raised by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.