[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE APPLICATIONS TO CONFIRM AND TO VACATE ARBITRATION AWARD CT Page 10538
Plaintiff seeks to vacate an arbitration award dated March 27, 1993 because "the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made as hereinafter set forth:
 a. The award fails to draw its essence from the contract.
 b. The arbitrator by retaining jurisdiction of the award did not issue a final and definite award as required by Conn. Gen. Stat. 52-418.
 c. The arbitrator by requiring that any dispute concerning the proper monies to be paid be referred back to the arbitrator for resolution did not issue a final and definite award as required by Conn. Gen. Stat. 52-418.
 d. The arbitrator's failure to recognize grievant's duty to have exercised his bumping rights under the contract is a violation of public policy.
 e. By failing to designate what is appropriate documentation for the reimbursement mileage, the award is not final and definite as required by Conn. Gen. Stat. 52-418."
Facts
This matter came to arbitration from a grievance filed by grievant who was laid off effective May 17, 1991 from his position as a Skilled Maintainer within the Department of Mental Retardation. Grievant was employed by DMR at the John Dempsey Regional Center (Center).
DMR was at that time a Department of the State of Connecticut created by statute and organized into six CT Page 10539 Regions and two state training schools, Mansfield and Southbury.
After receipt of the layoff notice, grievant filed a grievance alleging that the state had violated Articles 12 and 13 of the NP-2 Collective Bargaining Contract (Contract) between the State of Connecticut and Connecticut Employees Union Independent (Union). The grievant was offered bumping rights which he did not exercise.
The issue submitted to the arbitrator was:
 "Did the Department of Mental Retardation violate Article 12 and/or 13 of the NP-2 unit contract by the layoff of Grievant James Dingwell?
If so, what shall be the remedy?"
Hearings were held on September 11, 1992 and January 15, 1993. Briefs were filed by both parties and on March 27, 1993, the arbitrator issued the following award which is the subject of this application to vacate:
"AWARD
 As more fully specified in the Opinion, The Department of Mental Retardation violated Article 13 of the 1988-91 NP-2 contract by the layoff of Grievant James Dingwell.
 As Remedy, Grievant shall be immediately reinstated to his former full-time position as Skilled Maintainer at Dempsey Center, and shall receive full backpay and all benefits for the period commencing 5/18/91 until his reemployment on 9/3/91 as a Supervising Custodian at the Department of Child and Youth Services. For the period commencing 9/3/91 until Grievant's reinstatement as a Skilled Maintainer at Dempsey Center pursuant to this Award, Grievant shall receive the difference in pay between Skilled Maintainer and Supervising Custodian. Only wages are included, overtime is specifically excluded CT Page 10540 and is not awarded herein. Grievant shall also be awarded travel expense in the nature of mileage reimbursement for the additional miles traveled to his position with DCYS at Meriden, upon submission of appropriate documentation. Grievant's official personnel record shall also be modified to reflect continuous State service during the period covered by this Award."
In the following paragraph the arbitrator states the following:
 "This Arbitrator shall retain jurisdiction of the Award and any disputes concerning the proper monies to be paid to Grievant shall be referred to this Arbitrator for resolution."
All of the arbitrable activity in this case occurred before July 1, 1992.
The court has the Collective Bargaining Contract, the Arbitrator's "Opinion and Award", and a wage chart.
Grievant was "the least senior full-time Skilled Maintainer in Region 3."
Law
I. Finality of Award
Awards must be final. Conn. Gen. Stats. 52-418. This one is. It conforms to the submission as set out by the arbitrator. The paragraph following the Award, even if taken as a part of the Award, is mere surplusage raising only a possibility not then or now raised by either party.
II. Draw Its Essence from the Contract
A. School vs. Region
The Award finds violation only of Article 13 of the Contract. By referring to his Opinion the arbitrator tells us how plaintiff violated Article 13. CT Page 10541
First, the arbitrator reasonably requires that the state in establishing regions "must do this within the established organizational framework which is based on reason." The arbitrator then had to decide if separating the Mansfield Training School and the Southbury Training School from their respective regions resulted in a rational and reasonable organizational framework. Here he had no choice. The legislature had already authorized the defendant to establish that "organizational framework" in C.G.S. 4-8. In addition, C.G.S. 17a-210(a) recognizes that state training schools are distinct from "state mental retardation regions." Also see, e.g., C.G.S. 17a-212, 213, 270, 271, 273, 276, 277 and 280.
On the pertinent dates Mansfield Training School was not a part of Region 3. P.A. 91-278. Before that pertinent period the Commissioner of the Department of Mental Retardation had the authority to "organize the department . . . into such divisions, bureaus or other units as he deems necessary for the efficient conduct of the business of the department [etc.] . . . provided such organization shall include any division, bureau or other unit which is specifically required by the general statutes." Here the Commissioner did divide the Mansfield Training School from regions and their "regional facilities." C.G.S. Chapters 319b and 319c. Also see 1990 Connecticut State Register and Manual, pages 269-272.
In addition, the Contract itself never speaks of any requirement for a "rational and reasonable organizational framework." The arbitrator cannot add such a requirement.
B. "Part-Time" of 34 Hours
One Skilled Maintainer (Birket) who was less senior than grievant worked 34 hours per week and was designated as a part-time employee. A standard work week is 35 hours in five consecutive days. The arbitrator perceived that situation "with skepticism" but did find that she was a part-time employee in the classification of Skilled Maintainer, who was less senior than Grievant." He then made a "finding" that she should have been selected for layoff before the grievant.
Although the arbitrator speaks of "full-time" and CT Page 10542 "part-time" Skilled Maintainers, it is clear that in both cases he is speaking of permanent employees.
Permanent part-time employees' rights are set out in Article 27 of the Contract and the arbitrator discussed those rights, particularly in regard to "bumping", at some length. Grievant never tried to exercise his bumping rights.
The classification of grievant is as a permanent Skilled Maintainer. The classification of Birket is as a permanent Skilled Maintainer. That is what this arbitrator found. The court has not been directed to any statute, regulation or part of the Contract which distinguishes permanent part-time employees from permanent full-time employees for the purposes of classification.[1]
Thus, there is support for the arbitrator's conclusion that plaintiff "violated Article 13 when it selected Grievant for layoff over Birket."
III. Public Policy
The court can find no violation of any explicit Connecticut public policy which is well-defined and dominant. State v. Council 4 AFSCME, 27 Conn. App. 635,640-641.
IV. Bumping Rights
The grievant was entitled under the award to have Birket laid off. He did not have to use his bumping rights.
Application to vacate is denied. Application to confirm is granted.
N. O'Neill, J.