[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has made application to the court for an order vacating an arbitration award pursuant to General Statutes § 52-420[1]
on the grounds that the award is against public policy.
The plaintiff general contractor and the defendant subcontractor entered into an American Institute of Architects' "Standard Form of Agreement Between Contractor and Subcontractor." The plaintiff presented the contract to the defendant for its signature. There is no dispute that both parties are signatories to the contract.
Article thirteen of the contract provides that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration . . . in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise." On or about October 11, 1991, the defendant made a demand for arbitration with the American Arbitration Association on a form provided for by that association. Under "nature of dispute" the defendant stated: "Balance due and owing under subcontract." The "claim or relied sought" was stated to be $180,000.
On August 24, 1994, the arbitrator rendered an award for the defendant. Specifically, the arbitrator awarded "Cascella Son Construction, Inc. the sum of $60,732.00 to be paid by Pace Construction, Inc. This is the amount determined by the Arbitrator to be awarded after the application by him of (a) setoffs agreed on by the parties during the proceedings, and (b) application of the setoffs claimed by the Respondent (Pace Construction, Inc.) in his counterclaim which were disputed by the Claimant (Cascella 
Son Construction, Inc.). In addition, Pace Construction, Inc., is directed to make payment of the total sum of $8,675.00 for labor and materials as previously agreed to by the parties."
The plaintiff timely made application to vacate the award claiming that "[t]he claim of Cascella and the award of the arbitrator is made pursuant to § 14.2.1 of the subcontract . . . a termination clause which is unenforceable because it is against public policy."
Section 14.2.1 of the subcontract provides:
If the Subcontractor persistently or repeatedly fails or neglects CT Page 11790 to carry out the Work in accordance with the Contract Documents or otherwise to perform in accordance with this Agreement and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy he may have, terminate the Subcontract and finish the Work by whatever method he may deem expedient. If theunpaid balance of the Contract Sum exceeds the expense of finishingthe Work, such excess shall be paid to the Subcontractor, but if such expense exceeds such unpaid balance, the Subcontractor shall pay the difference to the Contractor."
(Emphasis added.)
In Saxon Construction Management Corp. v. Masterclean ofNorth Carolina, Inc., 273 N.J. Super. 231, 641 A.2d 1056 (App.Div. 199 4), cert. denied, 137 N.J. 3 —, 645 A.2d 142 (1994), the Appellate Division of the Superior Court of the State of New Jersey affirmed a Superior Court decision which held that a provision identical to § 14.2.1 was void as against public policy. The plaintiff here rests his entire case on the decision in Saxon.
In Saxon, the plaintiff general contractor instituted a civil action alleging that the defendant Masterclean, a subcontractor, breached its subcontract for asbestos abatement and removal in four hospital buildings. After Masterclean had completed work on two buildings, it failed to do the work on the remaining two buildings. After repeatedly requesting that Masterclean perform its contract, Saxon declared Masterclean in default. After terminating its contract with Masterclean, Saxon entered into a new contract with another subcontractor. Id., 273 N.J. Super. 233-234. "It is undisputed that Saxon paid the new subcontractor approximately $200,000 less than it would have been required to pay Masterclean had the defendant performed its obligation." Id., 234-235.
The trial court held that Masterclean had breached the subcontract but that Saxon had suffered no damages. At issue on appeal was Masterclean's counterclaim, based on a contract provision similar to § 14.2.1 in which it sought the $200,000 difference between what it would have been entitled to charge under its subcontract with Saxon and what Saxon had to pay to complete the job. Id., 273 N.J. Super. 234-235. The trial court had denied the counterclaim but awarded Masterclaim damages based on quantum meruit for the work it had performed. CT Page 11791
The question presented on appeal was whether the termination clause "violates public policy because it permits a defaulting party to profit by its breach of the agreement and discourages the innocent party from minimizing its losses." Id., 273 N.J. Super. 235
. The Appellate Division observed that in New Jersey, the sources of public policy "`include federal and state legislationand judicial decisions.'" (Emphasis added.) Id., 237. That court held that the termination clause violated public policy because it promoted economic waste. That clause, said the court,
 encourages the subcontractor to breach its agreement where it knows that its services can be purchased at an amount less than the contract price. It provides the defaulting subcontractor with a windfall despite the express language sanctioning the subcontractor's termination for `repeated fail[ure] . . . to carry out [its contractual duty].' And it discourages the contractor from affirmatively seeking to minimize its losses by obtaining a substitute contractor at a lesser cost." Id., 237-238. The court did not rely on any statutory basis for its decision but, rather, observed that "[t]he economic waste doctrine has its origin in compelling considerations of equity and justice." Id., 238.
The procedural posture in which the present case arises is significant. Saxon was a civil action for breach of contract. This case is an application to vacate an arbitration award. "An application to vacate an arbitration award triggers special statutory proceedings that are not civil actions." Middletown v.Police Local, No. 1361, 187 Conn. 228, 231, 445 A.2d 322 (1982). "General Statutes 52-418 (a) provides in pertinent part: `Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers . . . .' The trial court's analysis under this provision ordinarily is limited to whether the arbitration award conformed to the submission. Town of East Haven v. AFSCME, Council 15, Local1662, 212 Conn. 368, 371, 561 A.2d 1388 (1989); Malecki v.Burnham, 181 Conn. 211, 213, 435 A.2d 13 (1980); GennariniConstruction Co. v. Messina Painting Decorating Co., 5 Conn. App. 61,65, 496 A.2d 539 (1985). Where the award is challenged as repugnant to the public policy of this state, however, the statute allows our courts to vacate the award even if it conforms to the submission. Watertown Police Union Local 541 v. Watertown,210 Conn. 333, 339, 555 A.2d 406 (1989); State v. Connecticut CouncilCT Page 117924, CEU, AFSCME, 7 Conn. App. 286, 290, 508 A.2d 80 (1986); see alsoNew Haven v. AFSCME, Council 15, Local 530, 208 Conn. 411, 416,544 A.2d 186 (1988); Stratford v. Local 134, IFPTE, 201 Conn. 577,590-91, 519 A.2d 1 (1986)." State v. Council 4, AFSCME,27 Conn. App. 635, 639-640, 608 A.2d 718 (1992).
 "A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect "`conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them."' Watertown Police Local 541 v. Watertown, supra, 339-40; Board of Trustees v. Federation of Technical College Teachers, 179 Conn. 184, 195, 425 A.2d 1247
(1979); Stamford v. Stamford Police Assn., 14 Conn. App. 257, 259, 540 A.2d 400 (1988). `[T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . .' (Citations omitted; internal quotation marks omitted.) Watertown Police Union Local 541 v. Watertown, supra, 340. In undertaking public policy review of an arbitration award, we are not `concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.' Board of Trustees v. Federation of Technical College Teachers, supra." State v. Council 4, AFSMGE, supra, 27 Conn. App. 640-641.
In State v. Council 4, AFSCME, supra, an arbitration award reinstated with, inter alia, back pay, an employee of the Department of Income Maintenance who had created a false file naming himself as the recipient of welfare benefits, and thereby cased approximately $1640 in public assistance checks. Id., 636. The arbitrator ascribed the employee's actions to mental illness "albeit episodic in nature" but which "were not wilful or volitional or within his capacity to control." Id., 638. The appellate court affirmed the judgment of the trial court vacating the award on the basis of public policy. Said the appellate court:
 "This state's compelling public policy of not tolerating the knowing misappropriation of state funds by state officials or employees cannot be disputed. General Statutes § 53a-119 (6), which explicitly proscribes such conduct, represents an unequivocal CT Page 11793 legislative articulation of this policy. The public policy of discouraging fraud generally is firmly rooted in our common law as well." Id., 641.
In State v. R.A. Civitello Co., 6 Conn. App. 438,505 A.2d 1277, cert. denied, 199 Conn. 810, 508 A.2d 770 (1986), the defendant was awarded a state contract. Subsequently, one of the defendant's subcontractor sub-bidders on the project withdrew its sub-bid and was replaced by another sub-bidder who offered to do the work for $30,000 less. The state reduced the defendant's contract price by $30,000 to reflect the difference pursuant to General Statutes (Rev. to 1981) § 4-137g.[2] The defendant "refused to accept the adjustment and, upon completion of the project, filed a demand for arbitration under . . . the contract . . . for restoration of the amount." Id., 440. The arbitrator awarded the defendant the sum of $30,000 and the plaintiff appealed. The superior "court vacated the arbitrator's award on the ground that it contravened the public policy behind General Statutes § 4-137g
and was, therefore, illegal." Ibid. The appellate court affirmed.
In Board of Trustees v. Federation of Technical CollegeTeachers, 179 Conn. 184, 425 A.2d 1247 (1979), a provision in a collective bargaining agreement provided state-employed teachers with more sick leave than was provided for by statute. The sick leave provision in the collective bargaining agreement had not been approved by the legislature. The issue as to how many sick leave days accrued under the agreement was submitted to an arbitrator who found that the number of days stated in the agreement controlled. The arbitrator further held that he was not empowered to determine whether a provision in the agreement was in conflict with a state statute. The plaintiff appealed to the superior court which vacated the award. The supreme court affirmed, stating: "If the contract term is illegal in light of conflicting statutes, it is not legitimated by the arbitration process; and if the agreement should not on that account be enforced, it is not rendered enforceable by an arbitrator's decision." Id., 196. See also Waterbury Teachers Assn. v.Furlong, 162 Conn. 390, 424-25, 294 A.2d 546 (1972) (arbitration award based on a collective bargaining provision which was in conflict with the city charter, held, vacated); State v.Connecticut Council 4, CEU, AFSCME, 7 Conn. App. 286, 508 A.2d 806
(1986) (arbitration award which allowed hearing reporters who took testimony at motor vehicle department hearings to obtain extra compensation for preparing transcripts for private parties, held, violative of General Statutes § 14-50a). CT Page 11794
The foregoing constitute all of the appellate cases in which an arbitration award has been vacated because it violated public policy. In every instance that public policy was referable to a specific statute. This comports with the view that "[t]he public policy exception to arbitral authority should be narrowly construed . . . ." State v. Council 4, AFSCME, supra, 27 Conn. App. 640. The
 view that public policy exceptions to arbitral authority should be narrowly construed finds support in a recent decision of the United States Supreme Court. In United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 44, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the United States Supreme Court concluded that a policy against the operation of dangerous machinery by persons under the influence of drugs or alcohol, while `firmly rooted in common sense,' did not permit a court to set aside an arbitration award. The court stated: `[A] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.' [Internal quotation marks omitted.] Id., 43; see W. R. Grace Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (award of back pay did not violate public policy mandating obedience to judicial orders because the award did not compel the employer in Grace to violate a district court order, but merely required the payment of retrospective damages)."
New Haven v. AFSME, Council 15, Local 530, 208 Conn. 411, 417,544 A.2d 186 (1988).
The public policy challenge to the award in the instant case is based on the public policy against economic waste. There is a "judicial policy of avoiding unnecessary economic waste." AmericanBank of Connecticut v. Eagle Construction Co., 10 Conn. App. 251,255, 522 A.2d 835 (1987). In the context of this case, however, this policy is not referable to a specific statute. It is, rather, a "general consideration of supposed public interests . . . ."State v. Council 4, AFSCME, supra, 27 Conn. App. 640-641. The policy against unreasonable economic waste is important. It is reflected in the common law measure of damages for breach of contract; Kevin Roche-John Dinkeloo Associates v. New Haven,
CT Page 11795205 Conn. 741, 749, 535 A.2d 1287 (1988); Johnson v. Healy, 176 Conn. 97,105, 405 A.2d 54 (1978); Levesque v. D M Builders, Inc.,170 Conn. 177, 180-181, 365 A.2d 1216 (1976); and has been employed to ascertain the presumed legislative intent behind the enactment of a statute. Dubkowski v. Administrator, 150 Conn. 278, 283,188 A.2d 658 (1963). Such a policy, however, is not "so well defined and dominant"; State v. Council 4, AFSCME, supra, 27 Conn. App. 640; that, alone, it may be employed by the court to invalidate a provision in a contract entered into between parties of presumed equal bargaining power and to vacate an arbitration award based on that provision.
In addition, it is significant that this case arises in a different posture than did Saxon Construction Management Corp.v. Masterclean, Inc., supra. In Saxon, the claim that a provision in the contract was against public policy arose in an original civil action for breach of contract in which the defendant asserted a counterclaim. Here, the public policy claim is asserted in the context of an application to vacate an award which was the product of a consensual arbitration. Not only is review of such awards sharply circumscribed; New Haven v. AFSCME, Council 15,Local 530, supra, 208 Conn. 415; but, also, our supreme court has cautioned that "`the public policy defense will not often succeed, particularly if the party using it did not challenge the arbitration process at an earlier stage, such as by moving for a stay of arbitration.' M. Domke, Commercial Arbitration (Rev. Ed. Wilner 1984) § 33.03, p. 470." Ibid. "General Statutes § 52-415
expressly provides for submission to the court `upon request of all the parties to the arbitration,' of questions that arise during the arbitration proceeding." Wilson v. Security Ins. Group,199 Conn. 618, 631, 509 A.2d 467 (1986).[3] "Although this process was available to the [plaintiff] during the arbitration proceeding, there is no indication on the record . . . that the parties exercised this option." Carroll v. Aetna Casualty SuretyCo., 189 Conn. 16, 23n. 9, 453 A.2d 1158 (1983).
Finally, this is not the case in which the public policy against unreasonable economic waste, advanced by the plaintiff, may be effectively vindicated. The evidence is that it was the plaintiff contractor which submitted the subcontract, containing the offensive article 14.2.1, to the defendant subcontractor. With this fact in mind, the plaintiff's claim that § 14.2.1 is against public policy is reminiscent of the allocution by a man convicted of killing his parents who, at his sentencing, threw himself on the mercy of the court because he was an orphan. In any event, CT Page 11796 there is nothing of record evidencing that the portion of § 14.2.1 which allows a defaulting subcontractor to claim the savings yielded by a subsequent subcontractor's having completed the work less expensively played any part in the claim of the defendant or in the award rendered by the arbitrator.[4] An arbitration award based on a contract consensually entered into ought not be vacated based on a claim that one portion of one sentence in that contract may be against public policy where that claim is so abstract and is presented in such a factual vacuum. Cf. Lacey v. Williams,16 Conn. App. 711, 715, 548 A.2d 1357 (1988).
The application to vacate the award is denied.
Bruce L. Levin Judge of the Superior Court