[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD
This case concerns an application to vacate an arbitration award and a cross-application to confirm the award.
The award was rendered on August 11, 1994 by the State of Connecticut Board of Mediation and Arbitration (SBMA). The award was issued in a labor grievance arbitration between the Hartford Board of Education (Board) and one of the union's representing the Board's employees.
A union member had been demoted to a position of lower classification and wage and the union filed a grievance pursuant to the labor contract between the parties claiming CT Page 9382 the contract had been violated because there was no "just cause" for the demotion.
At the hearing subsequently held before the SBMA the Board sought to introduce evidence that the employee had recently pleaded guilty to federal criminal charges of bank fraud. The employee's federal criminal fraud conviction involved funds belonging to the union local and not the Board.
The SBMA refused to permit the Board to introduce evidence concerning this matter by precluding its use to establish "just cause" as a result of its interpretation of Article XII Section 12.1(B) of the labor contract. That portion of the labor contract provides that
 Records of disciplinary action shall be removed from the employee's file after two (2) years.
The SBMA according to the Board's memorandum decided "that this clause prevented the board from taking disciplinary action in September 1990 based on an August 1990 Federal criminal conviction because the event giving rise to the conviction occurred more than two years earlier, in 1988 and/or because the hearing on the union's grievance of the Board's action occurred more than two years after the incident and/or discipline occurred", page 3 of memorandum.
In its memorandum the Board presents reasons why the SBMA decision creates practical problems as to the future use of this employee in the position he would be restored to and why it was unfair under the facts of this case. The Board points out that the employee in question held a position that included responsibility for managing thousands of dollars. His misconduct undermined the Board's confidence in him as a fiscal manager, made him unfit to oversee the Board's finances and rendered it impossible for the Board to comply with city charger requirements that this employee be bonded.
The Board also represents that it didn't act sooner to demote this employee because it didn't have and couldn't obtain from the employee sufficient evidence of his guilt of the Federal charges to establish "just cause". The employee was unwilling to discuss the matter while charges were pending and "others who were involved did not provide the needed information", page 3 of memorandum of Board. The Board CT Page 9383 further intended to prove its established policy regarding employees who are charged with and convicted of crimes. That policy provides that the Board may investigate an act on criminal charges after they are resolved where it is necessary to protect the Board's interest.
As a result of the SBMA's interpretation of the above mentioned clause of the labor contract the Board claims it was unable to establish "just cause" for the discipline and the SBMA s arbitration award required the reinstatement of the employee with full back pay. The Board filed an application to vacate the award pursuant to Sections 52-418 and 52-419 of the general statutes. The Board has advanced three arguments for vacating the award (1) it is inherently inconsistent with the underlying labor contract; (2) it violates public policy; (3) the arbitrators were guilty of misconduct in refusing to hear pertinent evidence.
(1)
The first ground on which the Board relies is its claim that the arbitration award is inherently inconsistent with the underlying contract.
The submission made to the SBMA is a broad one:
 "Did the Hartford Board of Education violate the contract when they disciplined the grievant by demotion to a lower classification and wage? If so what shall the remedy be?
In Board of Education v. Bridgeport Education Association, 173 Conn. 287, 291 (1977) the court said: "In this case, an examination of the submission reveals that the parties in effect directed the arbitrator to determine whether the Board committed error in its interpretation and application of the terms of the collective bargaining agreement . . ." As in that case so in this one "on the face of the record, the award conforms to the submission", id. p. 291.
In making its award the Board interpreted a provision of the labor agreement, Section 12.1(B).
The Board concedes as it must that a court must pay great CT Page 9384 deference to the decision of the arbitrators. As said in a leading case often quoted in our cases
 "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if the courts had the final say on the merits of the awards." United Steelworkers of America v. Enterprise Wheel Car Corporation. 363 U.S. 593, 596 (1959).
In the term "merits of the award" is included the activities of arbitrators in interpreting and applying the collective bargaining agreement, 363 U.S. at p. 597.
But the Board argues this is one of those "limited circumstances" where a party claims the awards "is inherently inconsistent with the underlying collective bargaining agreement." Then "the court will compare the agreement as written." Board of Education v. Local 818, 5 Conn. App. 636,640 (1985). This is so because as the court said in theSteelworkers case an "arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement", 363 U.S. at p. 597, Darien Education Association v.Board of Education, 172 Conn. 433, 437 (1977).
The Board's position is that the SBMA disregarded contract provisions and wrote a new clause into the contract which provided the Board had no right to discipline employees more than two years after an incident. The SBMA based its decision on its interpretation of a specific clause of the agreement which says:
 Records of disciplinary action shall be removed from the employee's file after two (2) years.
Article XII, § 12.1(B).
The SBMA interpreted the language "employees' file" to mean not only the employee file maintained by the Board but the grievance file and the investigative file. It further concluded such records over two years old couldn't form the basis for discipline. In effect it concluded "records of disciplinary action include all three files. CT Page 9385
I can't say that I particularly agree with the SBMA's interpretation of this clause. But no matter how interesting or uninteresting an observation that may be it is completely irrelevant. As said in the Steelworkers case at pp. 598-599 where the employer disagreed with the arbitrator's interpretation of a labor agreement:
 Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United Steelworkers of America v. American Manufacturing Co., ante, p. 564, decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
The Connecticut cases are in accord with this view, Boardof Education v. Bridgeport Education Assn, 173 Conn. 287, 291-293
(1977). I cannot say that here the arbitrators "failed to interpret the agreement as written", "It is clear . . . that the arbitrators were interpreting the terms of the agreement",Board of Education v. Local 818, 5 Conn. App. 636 at p. 64 (1985). In Hudson Wire v. Winsted Brass Workers Union,150 Conn. 546 (1963) the court made the following observation:
 The company contends further that the management clause which reserves to the company the control of the work force, prevents the contract from being CT Page 9386 construed so as to forbid the employment for foremen in production work. This contention defeats itself by invoking a clause of the contract to resolve a dispute and, thereby, necessarily treating the dispute as one which involves `the application and/or interpretation' of the contract. It cannot be successfully argued that the management clause in this contract so conclusively settles the issue that there is nothing to arbitrate
Id. pp. 551-552.
This then is a case where the arbitrator reached its decision by interpreting a clause of the contract and I can't say the wording of that clause explicitly excludes the interpretation given to it by the SBMA.
Despite all the broad language in the cases about whether the award can be said to arise from the "essence of the agreement" and the court's role in comparing the agreement with the award when a claim is made that it does not, awards are not overturned when the courts disagree with the ambit and effect given to a labor agreement provision by the arbitrator. Awards are overturned when arbitrators impose a requirement on one of the parties without seeking to base it on any provision of the agreement. Thus in Board of Education v. AFSCME,195 Conn. 266 (1985) the court said in revising the trial court's refusal to vacate an award:
 The trial court stated the "arbitrators found that the Board had violated the agreement in the manner in which it served the termination notice on (the employee)." There is, however, no provision in the agreement which addresses the issue of the manner in which a termination notice must be served. Id. p. 278.
The court went on to later observe:
 Here, the arbitration panel exceeded its authority by considering and basing its award on a document which was not part of the parties' agreement. This court had no choice but to refuse enforcement of the award, Id. p. 273.
I can't say that what occurred in that case occurred CT Page 9387 here. I believe the SBMA reached its decision by its interpretation of a clause in the labor agreement. Even if I felt its interpretation was erroneous, I have no authority to vacate the award.
(2)
The Board also argues that even if the award in this case were held to conform to the submission it must be overturned because it is "repugnant to the public policy of the state."
Although the SBMA's ruling permits discipline for up to two years after an incident, the Board argues the award violates the state's public policy by "condoning" criminal misconduct, it undermines the city's policy and charter requirement to secure fidelity bonding for this employee. It compels the Board to maintain a person convicted of fraud in a position of significant responsibility over the city's well-being.
The two leading cases that have dealt with this public policy issue are United Paperworkers International Union et alv. Misco Inc., 484 U.S. 29, 42 (1987), W. Grace Co. v. RubberWorkers, 461 U.S. 757, 766 (1983), Connecticut cases are,Watertown Police Union Local 541 v Watertown, 210 Conn. 333,339 (1989), New Haven v. AFSCME, 208 Conn. 411, 416 (1988),Stratford v Local 134, 201 Conn. 577, 590 (1986), Board ofTrustees v Federation of Technical College Teachers, 179 Conn. 184,195 (1979), State v Council 4, AFSCME, 27 Conn. App. 257,259 (1988), State v Conn. Council 4, 7 Conn. App. 280, 290
(1986).
As said by the court in the Watertown case at 210 Conn. page 340:
 . . . the public policy exception to arbitral authority should be narrowly construed and a court's refusal to enforce an arbitrator's interpretation of (collective bargaining agreements) is limited to situations where the contract as interpreted would violate some explicit public policy that is well-defined and dominant and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of public interests" . . . . The CT Page 9388 party challenging the award "bears the burden of proving that illegality or conflict with public policy is clearly demonstrated."
Often the public policy claim, involves a situation where it is said that the award directly violates an affirmative requirement of the constitution or a state statute. WatertownPolice Union v. Watertown, supra (award claimed to violate police statutory obligation to make arrests) id. p. 341; NewHaven v. AFSCME, supra (award of back pay claimed to violate provisions of state statute), id. p. 418, Board of Trustees v.Federation of Technical College Teachers, supra (award said to violate state statutes regarding sick pay) id at pp. 194-95;Stratford v. Local 134, supra (award said to violate equal protection policy of state constitution) id. p. 591.
This is a very difficult case since it lies in a grey area where there is no claim that an award violates a specific or explicit statutory or constitutional requirement but involves an argument that it in some way prevents an employer, often a governmental employer, from carrying out its public responsibilities. This is a dangerous area for the courts to become involved in since they can easily violate the admonition of cases like United Paperworkers and Watertown
that they give a narrow interpretation to this basis for overturning awards and not try to impose their their general notions of what public policy should be and what it requires.
Thus in Stamford v. Stamford Police Assn, supra, an injured police officer became blind and had little hope of recovering his sight but was terminated from sick leave status. The arbitrator held this was improper. The city claimed this violated public policy since it couldn't replace disabled officers with officers capable of performing their duties, thus the city couldn't perform its obligation of ensuring the public safety. The court disagreed and held that the award though "anomalous" violated no public policy,14 Conn. App. at pp 258-260.
Two cases favorable to the Board go as far as could be gone in applying this doctrine to vacate an award. State v.Council 4, 27 Conn. App. 635 (1992) and Avco Corporation v.Peter Preteska et al, 22 Conn. Sup. 475 (1961).
In State v. Council 4, an arbitrator ordered the CT Page 9389 reinstatement of a state employee with the department of income maintenance. The employee stole money from the very agency for which he worked, admitted as much to the state police on March 9, 1990 and was fired on March 28 for misuse of state funds which was a legitimate ground for dismissal under state personnel regulations, see Regs., Conn. State Agencies § 5-240-5a.
There is no state statute that provides and the criminal statute relating to theft of state funds which the court referred to does not say that one of the explicit consequences of conviction is that such an employee shall lose his or her job. But the court nevertheless vacated the arbitrator's award citing the undisputed and compelling public policy of the state "of not tolerating the knowing misappropriation of state funds by state officials or employees." Id. page 641.
This case is distinguishable from the one before the court in that a specific state regulation explicitly warranted the dismissal and the employee stole state funds from the very state agency he worked for. Firing such an employee directly discourages similar activity by other state employees at their job. It is a great leap under this narrow public policy doctrine to say that a firing is permitted for any wrongdoing or even act of theft committed by a state employee having nothing directly to do with his or her job.
In AVCO the court similarly vacated the reinstatement of an employee by an arbitrator. There the employee had been convicted of gambling on the employer's premises. The court based its ruling on its conclusion the award violated public policy but the court explicitly noted that the criminal statute to which the employee pleaded contained a provision making the owner of premises where gambling went on criminally liable. To the court the arbitrator's decision in effect meant the employer had to furnish the premises and opportunity to engage in illegal activities. Not this case.
Although this is a close case it is also true that the interpretation of the contract here does give the employer two years from the date of the incident in question or wrongdoing to discipline the employee. We don't have a situation where no discipline at all is permitted. I do not believe it's up to a court to say that the interpretation given doesn't satisfy the requirements of public policy. The Board at CT Page 9390 argument and in its brief maintained it could not move sooner against this employee because he and others wouldn't cooperate. Understandably the employee facing federal charges refused to give a statement. However, it is unclear to me why "others" didn't cooperate or why law enforcement officials weren't contacted to gather information necessary to pursue discipline within the two-year period. I see no a priori reason why the two-year limit on discipline as a matter of law can be said to violate public policy goals.
The Board also refers to the fact that the award and failure to vacate it means that the charter requirement for bonding cannot be met for an employee who is in a sensitive position of financial trust. But I am not aware that bonding was made a specific requirement of employment in the job position at issue. As said in W R Grace Co. however the dilemma the Board finds itself in was of its own making. 461 U.S. at page 767. The city should have negotiated job descriptions and a labor agreement that explicitly protected itself in this type of a situation. What either side to an arbitration agreement cannot do upon losing arbitration is to ask the court to rewrite a labor agreement after the arbitrator has interpreted a provision adverse to it under the guise of enforcing public policy.
(3)
The final ground of the motion to vacate is that the arbitrators were guilty of refusing to hear pertinent evidence. No authority is cited for a court's evaluating the evidence heard or not heard by the arbitrator in order to determine whether an award should be vacated. I believe this ground is little more than an explanation of the consequences at the hearing level of the SBMA's interpretation of the labor agreement provision in question, Article XII, § 12.2(B). In light of my decision in Section (1) I will not vacate the award on this ground.
The motion to vacate the award is denied and the court grants the cross-motion to affirm the award. CT Page 9391