OPINION OF THE COURT
John Manning Regan J.
Subject to rare exceptions not relevant in these cases, the Legislature has charged Small Claims Courts: "[to] conduct hearings upon small claims in such manner as to do substantial justice between the parties according to the rules of substantive law and [such courts] shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence” (UCCA 1804).
In obedience to that legislative mandate — to do substantial justice according to the rules of substantive law and without regard to the rules of pleading and practice — this court shall *204 consider both of these cases simultaneously in the following manner:
CASE NO. 1
Plaintiff Haefner is an employee of an airline and works at the Rochester Monroe County Airport. He is authorized to park his car in an area designated "employee parking” for a limited period of time. On September 22, 1985, his duties at work called him away from the airport suddenly for a few days. Meanwhile, his car remained parked in the designated area — or so he thought. Upon his return, he discovered that his car was missing from its parking space. He reported its disappearance to the police and other authorities, and learned, almost a week later, that the parking concessionaire, Apcoa, Inc., had towed the vehicle to another location inasmuch as the plaintiff’s car had stayed in place beyond the time limits. To recover the vehicle, Apcoa, Inc., charged Haefner $81.32 for towing and storage, and, of course, it also deprived him of the use of his car for about a week.
Apcoa’s defense is that it is the lawful independent contractor of the County of Monroe for operation of all public parking facilities at the Rochester-Monroe County Airport under Resolution No. 411 of the Monroe County Legislature, adopted on November 17, 1981, and in accordance with the concession contract executed pursuant to said resolution on November 17, 1981. The concession contract is in effect for five years from January 1, 1982 to January 1, 1987. Moreover, the specifications under such contract permit the operator of the parking facilities to fix both reasonable charges and reasonable regulations in respect to employee parking. The removal of plaintiff’s car from its location in the employee parking area, and the towing and storage of the car elsewhere for a week, and the charges therefor, derive from this concession contract and the rules and regulations of the concessionaire-operator, Apcoa, Inc. Further, these rules and regulations must, pursuant to the contract, be submitted to, and approved by, the Monroe County Director of Transportation.
Significantly, neither the rules nor the contract, nor anything else, provides for notice to the vehicle owner, either before or after the seizure, nor for an application to any judicial officer prior to the seizure and relocation of the vehicle, and before the imposition of towing and storage charges.
*205 CASE NO. 2
Plaintiff Sabree owns a 1983 Datsun registered in the State of Georgia. She frequently visits relatives in Rochester. On May 13, 1985, at 6:30 a.m., the city police issued two parking violation summonses, and affixed them to her car. Each ticket was for a $12 fine, and required a plea within 30 days of the date of issuance.
The parking tickets charged that although the car was parked lawfully, nevertheless, it was uninspected and its registration had expired, both violations of a city ordinance.[1]
Two days later, on May 15, 1985, the city police, and the Parking Violations Bureau, decided to remove Ms. Sabree’s car to the city pound under Vehicle and Traffic Ordinance of the City of Rochester § 111-72 B, which, in pertinent part, reads as follows: “Any vehicle found standing or parked in violation of any law or ordinance may be removed by or at the direction of a member of the Rochester Police Department to a vehicle pound designated by the Chief of Police, and such removal shall be deemed an abatement of a nuisance and at the risk and expense of the owner or person entitled to the vehicle or the person who parked the vehicle. The Chief of Police may store such vehicles in designated vehicle pounds or other suitable places at the risk and expense of the owner or the person entitled to possession thereof or the person who parked the vehicle. The owner or person entitled to possession of the vehicle so removed and stored may redeem the vehicle by the payment to the Chief of Police of the sum of thirty-five dollars ($35.) for the redemption of passenger vehicles * * * The redemption amounts shall include the cost of storage of the vehicle for the first twenty-four (24) hours or any portion thereof. Nothing contained herein shall be construed to prohibit a police officer or other person authorized to issue a parking violation ticket from affixing to a vehicle to be removed a parking violation ticket. The city shall be deemed a creditor of such owner or person entitled to possession and shall have a lien against the vehicle for the amount of expense so incurred. The city may maintain any action against the owner or owners, the person who parked the vehicle or any of them to recover the amount of the lien in a civil action as penalty for violations of this section.”
*206 This ordinance is a favorite of both police and the Parking Violations Bureau. It has been amended and updated, at least five times since its original enactment in 1961, mostly to increase the redemption fees and towing charges. Each year hundreds of vehicles are moved in this way.
Significantly, the ordinance does not provide for notice to the vehicle owner, either before or after the seizure, nor for an application to a judicial officer, prior to the seizure and relocation of the vehicle, and before the imposition of towing charges and redemption fees.[2]
There are thus common questions of law and fact in these cases. In each case, the plaintiffs vehicle has been taken without notice, and without his consent, and without judicial supervision. In each case, a municipal government has authorized a contractor, or statutory agents, to effect these seizures of property; in one, by means of a contract and regulations; in the other, by means of an ordinance.
Moreover, in neither case does there exist any pretense or claim that the taker of the property himself has any interest or lien in the vehicle. The right to seize emerges from a relationship with a local government, which grants the right unconditionally in order to promote the collection of parking fees or the enforcement of parking regulations. Further, after the seizure, the ordinances and/or regulations purport to authorize the compulsory collection of moneys from the owner of the vehicles, in addition to fees and fines, to pay for the costs of the seizure, and the costs of the detention and care of the vehicle. The ordinance even grants a post facto lien on the vehicle to assure collection of the charges.
Conspicuously absent in each of these cases is any police power interest of either municipality.
The parking contract between the County of Monroe and Apcoa, Inc. has nothing to do with public health, safety, or welfare. Paragraph 2 of the contract discloses the primary concern of the county — it sets a minimum annual revenue guarantee of $1,000,000. All the contract paragraphs that follow amplify that revenue concern — not any safety concern. Where safety and traffic flow at the airport are a potential problem, the county reserves its sovereign prerogative to monitor those areas with Deputy Sheriffs.
*207 The city ordinance is similarly overbroad. It applies to any vehicle "parked in violation of any law or ordinance”. There is no limitation whatsoever. There is no need for a risk to public health, safety, or welfare. There is no requirement to show an impediment to the public good such as blocking an emergency vehicle, obstructing the flow of traffic, or hindering necessary ingress or egress to homes, schools or factories. The ordinance allows seizure without notice for any violation, such as here, in this case, for an expired registration and/or inspection sticker.
LIABILITY FOR SEIZURE
Our Constitutions — State and Federal — forbid all deprivations of property without due process of law. The Federal Constitution proscribes only State action of this kind. The ambience of the New York Constitution is greater, it states simply: "[n]o person shall be deprived of life, liberty or property without due process of law.” (See, NY Const, art I, § 6.)[3]
Almost 14 years ago, the United States Supreme Court erected a rigid framework to confine governmental authorizations for outright seizure of property without prior notice and hearing. That court held: "Only in a few limited situations has this Court allowed outright seizure [of property] without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.” (See, Fuentes v Shevin, 407 US 67, 90-91 [1972].)
Neither the regulations of the concessionaire which the County Director of Transportation has approved, nor the ordinance of Rochester City Council, under which the Parking Violations Bureau has acted, satisfy these three cumulative *208 conditions. First, there is no important general public interest. The raising of revenue through the regulated use of public lands — including city streets — for automobile parking is not per se an important governmental interest. Only traffic congestion so severe as to halt freedom of movement might be enough to create a paramount public interest. And that type of congestion is not evidenced in either of these cases.
Second, there is no demonstrated need for prompt action. The parked vehicles here were not generating any threat to the public’s welfare.
Third, neither the regulations nor the ordinance — especially the latter — establish any standards of judgment at all, to say nothing of the constitutional requirement that there be specific standards and that they be drawn narrowly.
Therefore, the purported authorizations to the Parking Violations Bureau and Apcoa, Inc. by these municipalities to seize property without notice, and without prior hearing, in these cases, are unconstitutional because they lack due process of law. All such authorizations must provide for notice before seizure, but they do not. They must provide for judicial supervision, but they do not. They must fix narrow standards of urgency and necessity for justification of a seizure, but they do not. (See, Mathews v Eldridge, 424 US 319 [1976].)
What is more, these authorizations exacerbate the mischief of seizure without notice because neither demands prompt notice after seizure. Presumably, under the ordinance, the police pound can run up storage charges indefinitely without notifying anyone. And it is clear Apcoa, Inc., felt it had no obligation to notify plaintiff Haefner at any time, ever, about its seizure of his car.
This court is aware of the subsequent rulings of the United States Supreme Court in Mitchell v Grant Co. (416 US 600 [1974]) in which an ex parte writ of sequestration of mortgaged property was allowed prior to hearing and notice before an independent judicial officer — an apparent repudiation of the rule of Fuentes v Shevin (supra).
But the Mitchell case (supra) turned on the fact that the seizing party, under pertinent State statutes, himself had a vested property interest in the subject property being seized. As Mr. Justice White stated in the majority opinion, "this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor * * * The *209 reality is that both seller and buyer had current, real interests in the property”.[4]
There is no contention by either defendant in these cases that they had a property interest in these vehicles. At most, at the time of seizure, the Parking Violations Bureau and Apcoa, Inc. were simple contract creditors; their property interest no more than a chose in action, to be liquidated by judgment at a later date. Neither defendant had any lien or interest in the vehicle itself. And even if the defendants could assert a lien after seizure such as the ordinance gives, the New York Constitution would bar nonjudicial enforcement of any such lien. (See, Sharrock v Dell Buick-Cadillac, 45 NY2d 152 [1978], supra.) And so the failure to provide in either the regulations or in the ordinance, for prior, or at least prompt, judicial supervision of the seizure is a fatal constitutional flaw from which the authorizations cannot be saved.
Therefore, these intentional seizures of the plaintiffs’ vehicles are wholly unlawful and unjustifiable because they depend on unconstitutional grants of authority. Neither the County of Monroe nor the City of Rochester can exercise such authority themselves, nor can they delegate it to others, including these defendants.[5] For these reasons, each defendant is liable in damages to each plaintiff for the wrongful seizure of his property. (See, Warren v Delaney, 98 AD2d 799 [2d Dept 1983].)
DAMAGES
These outright seizures of private property without notice, and without an opportunity for hearing, and the extraction of additional fees and storage charges to pay for the costs of the seizure, are flagrant and egregious violations of constitutional law. As Mr. Justice Stewart observed in Fuentes (supra) the State must maintain a "strict control over its monopoly of *210 legitimate force”.[6] The law prohibits all private citizens from settling their disputes by forceful means. The law commands its citizens to resort to the judicial process. As for governments, the Constitution invests them with sole title to legitimate force, but also establishes constraints and inhibitions on the use of that force. The most important of these is due process of law.
Municipal governments hold no exemption from these constitutional constraints and inhibitions. While, as local governments, they may use force upon some occasions, in the furtherance of their police power, the indiscriminate use of force is not an inherent attribute of municipal governments which they may use on any occasion, for any reason or purpose.
Both the City of Rochester and the County of Monroe employ a full staff of attorneys to counsel them in all their activities, particularly legislation. In 1972, when the Supreme Court decided Fuentes (supra), it invalidated the procedures many State Legislatures had used to approve seizures of private property. The New York Legislature, for example, in 1978, extensively revised its replevin statutes to conform to the Fuentes and Mitchell decisions.[7] From aught that appears, however, the City of Rochester and the County of Monroe have ignored these developments in constitutional law. Isolated, as if in a vacuum, these municipalities have neither reviewed nor revised any ordinance, contract, or regulation in response to these decisions, nor have they endeavored to purge them of constitutional taint. Evidently, they have not yet felt the need to do so.
These plaintiffs have suffered property deprivation, inconvenience and anxiety, and financial loss because these municipalities, and the defendants, as their designees have disregarded fundamental precepts of due process of law which have been available to learn and to know for almost 14 years. Their ignorance is both deplorable and inexcusable. The court finds it a deliberate and culpable ignorance, and will for that reason, assess the entire syzygy of damage remedies: compensatory, direct and consequential; and punitive.[8]
*211 As for plaintiff, Haefner, he is entitled to recover the money he paid the defendant, Apcoa, for towing and storage in the sum of $81.32. He is also entitled to damages for loss of use of the vehicle for one week, which the court awards in the sum of $275. The question of punitive damages is addressed momentarily.
As for the plaintiff, Sabree, she is entitled to recover the money she paid the defendant, Parking Violations Bureau, for towing and storage charges in the sum of $35. She is also entitled to damages for loss of use of the vehicle, which the court awards in the sum of $150.
PUNITIVE DAMAGES
In Newport v Fact Concerts (453 US 247 [1981]) the United States Supreme Court held that municipal governments were immune from liability for punitive damages in a civil rights action under 42 USC § 1983.
In Sharapata v Town of Islip (56 NY2d 332 [1982]), the New York Court of Appeals held that the Legislature, in enacting Court of Claims Act §8, did not permit the assessment of punitive damages against the State or its political subdivisions.
There is no doubt, in these cases, that the principal tortfeasors are the municipal governments themselves — the City of Rochester and the County of Monroe. But in our theory of jurisprudence, each person is individually responsible for his own acts. The panoply of protections afforded municipal governments, therefore, do not extend automatically to those independent contractors who deal with such governments. Apcoa, Inc., accordingly, is not immune. That defendant’s conduct is as willful, as intentional, and as deliberate as the county’s. Nor is Apcoa, Inc. excused on the grounds of ignorance of the law. Commercial enterprises are bound to know the law as is everyone else. Apcoa, Inc. must respond in punitive damages for its intentional and illegal acts.
A more serious legal question is posed in respect to the Parking Violations Bureau. This Bureau is a unique creature of statute. The Legislature, in 1972, authorized the establishment of these bureaus, "in any city which heretofore or *212 hereafter is authorized to establish an administrative tribunal to hear and determine complaints of traffic infractions” (see, Vehicle and Traffic Law, art 2-B, § 235). For practical purposes, these bureaus exist only in New York City, Buffalo, and Rochester.
The legislation directs that the Commissioner of Motor Vehicles — a State official — shall appoint the chief executive officer of the bureau, and the hearing examiners who serve to adjudicate parking violations under local ordinances and State statutes.
In Vehicle and Traffic Law, article 2-B, § 237, under "functions, powers and duties”, the law allows the Parking Violations Bureau to enter judgments in its own name, to collect and remit funds in its own name, and to keep books and records in its own name. Moreover, it does not grant the bureau any power to tax, nor does it give the Bureau any other sovereign prerogative or police power.[9] The conclusion inferable from this article 2-B is that the Legislature intended to set up a public corporation whose principal function is the collection of revenue from parking violations.
Since this inference of revenue-raising is totally inconsistent with "carrying on government and administering its details for the general good”[10] — the hallmark of a municipal corporation — the rational underpinnings of the Sharapata case are inapposite. The legal conclusion, then, is that the exemption from liability for punitive damages is likewise inapposite, because the Bureau is not a political government.
Moreover, the Parking Violations Bureau is, like Apcoa, Inc., the codefendant, involved everyday in the citation, adjudication, and collection of parking charges, and is, despite pretenses to the contrary, simply a public corporation organized for the production of profit.
JUDGMENT®
For plaintiff Haefner, judgment against the defendant, Apcoa, Inc., in the sum of $81.32 direct damages, and the sum of $275 consequential damages, and the further sum of $500 *213 punitive damages; the total sum of $856.32, with costs of $4.87.
For plaintiff Sabree, judgment against the defendant, Parking Violations Bureau, in the sum of $35 direct damages, and the sum of $150 consequential damages, and the further sum of $500 punitive damages; the total sum of $685, with costs of $4.87.
And both plaintiffs may have execution therefor.

. New York has compacts with many other States to exchange registration and licensing information through interfaced computer hookups. Georgia is one such State.

. A statute itself, though published as a law, is not constitutional due process notice of its contents when executory conditions are a precursor to a deprivation of property. (Texaco, Inc. v Short, 454 US 516 [1982].)

. "The Fourteenth Amendment was a watershed — an attempt * * * [to furnish] minimum standards designed to guarantee the individual protection against the potential abuses of a monolithic government, whether that government be national, State or local * * * In contrast * * * the New York Constitution * * * [has] long safeguarded any threat to individual liberties, irrespective of from what quarter that peril arose.” (See, Sharrock v Del Buick-Cadillac, 45 NY2d 152,160 [1978].)

. 416 US, at p 604; emphasis added.

. In Wilson v City of New Orleans (479 So 2d 891 [La], the Supreme Court of Louisiana held that the power to decide whether to "boot” a vehicle (another form of seizure which renders the vehicle immovable) cannot constitutionally reside in a person having a financial interest in the booting process as an aid to collections of revenue. Certainly, this infirmity is also manifest in these cases, as both the Parking Violations Bureau and Apcoa, Inc. have, as their primary objective, the collection of parking fees and charges. These defendants, therefore, are not a detached and independent decision-maker, and they sorely lack the neutrality that due process compels.

. 407 US, at p 91.

. See, L 1978, ch 81, eff Jan. 1, 1979.

. The plaintiffs, of course, have sued only for the return of the money extorted from them as a result of the seizure and towing of the vehicles. Be that as it may, the preamble paragraph of this opinion and UCCA 1804 show that this procedural defect is not only not a limitation, but also that, *211 despite the defect, the court must follow the rules of the substantive law of damages in granting relief. To say the least, this is a common problem in Small Claims Court. Without legal advice, plaintiffs have no idea what remedies — particularly in damages — they may lawfully seek.

. The article does invest the hearing examiners with quasi-judicial powers by providing that they may adjudicate parking violations. These adjudications are merely administrative powers, however, because, in the final analysis, all such judgments are subject to judicial review in the courts. (See, Vehicle and Traffic Law, art 2-B, § 243.)

. 56 NY2d, at p 337.