CITY OF HARTFORD *v.* INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS,
LOCAL 760
(AC 17338)

O'Connell, C. J., and Lavery and Landau, Js.

Argued March 24—officially released August 18, 1998

*James C. Ferguson,* for the appellant (defendant).

*Karen K. Buffkin,* assistant corporation counsel, with whom, on the brief, was *Kevin Dubay,* corporation counsel, for the appellee (plaintiff).

LAVERY, J. The defendant, International Association of Firefighters, Local 760, appeals from the judgment of the trial court vacating an arbitration award in favor of the defendant. On appeal, the defendant claims that the trial court improperly granted the application filed by the plaintiff city of Hartford to vacate the arbitration award and denied the defendant's application to confirm the award because the trial court improperly (1) found that the arbitrator had neither the authority nor jurisdiction to make a monetary award, (2) found no evidence that the arbitrator considered the loss to union members, individually or collectively, as a result of the plaintiff's breach of the collective bargaining agreement and (3) concluded that the award of damages was punitive. We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiff and the defendant entered into a collective bargaining agreement (agreement) for the period of July 1, 1987, to July 1, 1991.[1] Pursuant to the applicable section of the agreement, the plaintiff was to provide certain health benefits for the defendant's members, including a basic medical plan, a major medical plan, and dental and other benefits. Blue Cross/Blue Shield of Connecticut, Inc. (Blue Cross/Blue Shield), was designated by the agreement to be the provider of the basic medical and dental benefits for the defendant's members. The agreement did not specify a particular health insurer to provide major medical benefits. Prior to July 1, 1991, the plaintiff contracted with Travelers Insurance Company (Travelers) to provide major medical benefits pursuant to the agreement. The parties' successor agreement contained the same relevant sections and language.

---

[1] Although the defendant's brief states that the parties' agreement was before the trial court, the agreement was not made part of the record before this court.

The agreement provided for the substitution of health insurance providers in article III, § 3.5.6, as follows:

"6. Substitute Health Insurance Carrier. The [plaintiff] may provide health insurance benefits for employees and their enrolled dependents, by other than the named insurance carriers provided:

"a. The plan(s) proposed as a substitute must contain at least equal or better coverage, benefits . . . portability and administration as the present plan(s) . . . at no additional cost to the employee or his or her enrolled dependents. Such substitute plan(s) must be subject to the rules and regulations of the State Insurance Commissioner's Office and shall not preclude an employee or his or her enrolled dependents from selecting . . . .

"b. The [defendant] shall have an opportunity to study the proposed plan(s) for a period of eighty (80) consecutive calendar days prior to implementation.

"c. If at the end of the eighty (80) consecutive calendar day study period there is disagreement between the parties on whether or not the plan(s) meet any of the criteria of subsection (a) above, then the issue will be submitted to the American Arbitration Association. . . . If the Arbitrator rules that the [plaintiff's] proposed substitute carrier's plan(s) does not meet the criteria as outlined in #6, a, b and c of the section, the [plaintiff] changes carriers, the standards outlined in #6, a, b, and c of this section, must be maintained during the life of the Agreement. . . . If the substitute carrier plan has been implemented, the old plan shall be re-established immediately and remain in effect for the life of the Agreement. The cost of AAA shall be split equally between the parties and the award will be final and binding."

In 1991, the plaintiff was faced with a severe fiscal crisis and a large projected budget deficit. To reduce

the deficit and to control escalating employee health insurance costs, the plaintiff decided to provide health benefits to all of its employees, including the defendant's members, through a self-funded consolidated plan administered by Blue Cross/Blue Shield. The plaintiff sent the defendant's president a letter dated May 16, 1991, that informed the defendant that the major medical plan would be provided through Blue Cross/ Blue Shield, rather than through Travelers. The letter also stated that there would be no change in the level of benefits, only a change in the method of funding the plan. The plaintiff instituted the self-insured program to provide health benefits for all of its employees on July 1, 1991.

On June 19, 1991, the defendant initiated the grievance process, which ultimately brought it to this court. The defendant's grievance was denied at the first and second steps of the process. Thereafter, the defendant filed for arbitration with the American Arbitration Association. The parties stipulated to the following issues to be determined by the arbitrator: "Did the plaintiff violate the agreement with the defendant when it became self insured on July 1, 1991? If so, what shall be the remedy?" A hearing was held before the arbitrator on numerous days on and between November 5, 1991, and April 28, 1994.[2] On November 2, 1995, the parties agreed to bifurcate the arbitration, deciding first whether the agreement had been violated. If the arbitrator found that the plaintiff violated the agreement, a hearing would be held to determine the remedy.

The arbitrator issued her finding on the merits on December 13, 1995, concluding, "[T]he [plaintiff] violated the collective bargaining agreement with [the

---

[2] The hearing was concluded on April 28, 1994, after which the arbitrator suspended consideration of the matter at the request of the parties, who were engaged in settlement negotiations.

defendant] when it became 'self-insured' on July 1, 1991. In accordance with the parties' November 2 stipulation, [the arbitrator] retains jurisdiction in the matter of the remedy." In reaching her conclusion, the arbitrator found that article III, § 3.5.6, of the agreement required the plaintiff, if it proposed a substitute plan, to provide "at least equal or better coverage" that would be "subject to the rules and regulations of the state insurance commissioners office." "Based on the complete record, it is clear that the [plaintiff] failed the second part of that test, at least, in changing its health care arrangements in July 1991. For the substitute plan, an Administrative Services Only contract with [Blue Cross/Blue Shield] is a form of self insurance (or self-funding, to be precise), and self insurance plans are not subject to regulation by the commissioner." The parties were unable to negotiate a settlement and proceeded to the second stage of the arbitration.

After holding an additional hearing and determining that the defendant should be made whole, the arbitrator issued the following award on February 16, 1996.

"Accordingly, the proper make-whole remedy is as follows:

"1. The [plaintiff] shall restore the health plans that were in effect on June 30, 1991 or, if such plans are no longer available, implement fully insured plans that provide equivalent or better benefits and coverage.

"2. The [plaintiff] shall deposit in a special escrow account, maintained by [the defendant] and subject to an independent audit, the sum of $1.3 million dollars for each twelve-month period (prorated) subsequent to July 1, 1991, during which the health benefit plans unilaterally implemented by the [plaintiff] remain in effect. After deducting its costs, including reasonable attorneys' fees and expert fees, [the defendant] shall divide the funds among the bargaining unit members,

retirees and survivors in proportion to the period of time each has been subject to the health plans since the changeover in 1991."

On March 15, 1996, pursuant to General Statutes § 52-418,[3] the plaintiff filed an application in the Superior Court to vacate the arbitrator's award on the ground that the arbitrator had exceeded her powers or so imperfectly executed them that a mutual, final and definite award was not issued, that the award failed to draw its essence from the collective bargaining agreement and that the award violates public policy. The defendant filed an application to confirm the arbitration award pursuant to General Statutes § 52-417.[4]

The trial court found that the arbitrator's finding with respect to liability conformed with the submission because the applicable section of the agreement contemplated changes in a health benefits insurance carrier

[3] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[4] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

only. The substitute health plan provided by the plaintiff as of July 1, 1991, was not provided by an insurance carrier and there was no insured. Therefore, the trial court determined that the arbitrator properly concluded that the plaintiff violated the terms of the agreement and the remedy provided by § 3.5.6 (c) was not applicable because it was to apply only to situations in which there was a change of health insurance carriers. The trial court also concluded that the arbitrator's award restoring insurance benefits to the defendant's members as they existed prior to July 1, 1991, was proper and was in accord with the submission.

Although it found that "the arbitrator could easily find that the remedy provided" in the agreement for violations of its substitute health insurance carrier provisions did not apply to the facts of this case, the trial court nonetheless ruled that the arbitrator's award of damages was punitive. The trial court held that the arbitrator had neither the authority nor jurisdiction to make the monetary award. The trial court granted the plaintiff's application to vacate and denied the defendant's application to confirm the award. The defendant appealed from the judgment of the trial court.

"The scope of review by the court of an arbitrator's power to make an award is limited. Arbitration is a creature of contract between the parties and its autonomy requires a minimum of judicial intrusion. . . . The parties themselves, by the agreement of the submission, define the powers of the arbitrator. . . . The submission constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided. . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. . . . An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need

only examine the submission and the award to determine whether the award conforms to the submission." (Citations omitted.) *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 583–84, 440 A.2d 774 (1981).

"It is axiomatic in this jurisdiction that any challenge to an award pursuant to General Statutes (Rev. to 1981) § 52-418 (d) on the ground that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award with the submission. . . . In order to decide whether the arbitrators have exceeded their authority, the reviewing court must examine the submission together with the award and determine whether the award conforms to the submission." (Citations omitted.) *Trumbull* v. *Trumbull Police Local 1745*, 1 Conn. App. 207, 212, 470 A.2d 1219 (1984).

"In determining whether a submission is unrestricted, we look at the authority of the arbitrator. The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.) *Perkins & Mario, P.C.* v. *Annunziata*, 45 Conn. App. 237, 239–40, 694 A.2d 1388 (1997). The submission in the case now before this court is unrestricted.

"Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992).

"[T]he public policy exception to arbitral authority should be narrowly construed and a court's refusal to

enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 340, 555 A.2d 406 (1989). "[W]ith respect to matters of public policy generally, arbitrators exceed their authority if their award orders a party to engage in conduct that is patently illegal or in clear violation of public policy. *Stratford* v. *Local 134, IFPTE*, [201 Conn. 577, 585, 519 A.2d 1 (1986)]; *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 195, 425 A.2d 1247 (1979); [R.] Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining (1976) p. 593." *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 416–17, 544 A.2d 186 (1988).

"A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks omitted.) *State* v. *Council 4, AFSCME*, 27 Conn App. 635, 640, 608 A.2d 718 (1992). "When a challenge to the arbitrators' authority is made on public policy grounds, the court is not concerned with the correctness of the arbitrators' decision, but with the lawfulness of enforcing the award." *Perkins & Mario, P.C.* v. *Annunziata*, supra, 45 Conn. App. 240.

I

The defendant first claims that the trial court improperly found that the arbitrator had neither the authority

nor jurisdiction to make a monetary award. We agree with the defendant.

A court's standard of review of an arbitrator's award is limited. See *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 583. The court may "only examine the submission and the award to determine whether the award conforms to the submission." Id., 584. "In making such a comparison, where the submission is unrestricted, the court will not review the evidence or the legal questions involved but is bound by the arbitrator's legal and factual determinations. *Game-A-Tron Corporation* v. *Gordon*, 2 Conn. App. 692, 695, 483 A.2d 620 (1984)." *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 5 Conn. App. 61, 65, 496 A.2d 539 (1985).

The second issue presented to the arbitrator was, if the arbitrator found that the plaintiff had violated the agreement when it became self-insured, what shall be the remedy. The submission did not limit in any manner the remedy the arbitrator could fashion. The parties placed no restrictions on the submission to the arbitrator, such as judicial review. The submission was unrestricted, therefore we cannot review the award for errors of fact or law. See id., 64. We conclude that the arbitrator was empowered to award compensatory damages but not punitive damages, which contravenes public policy. See part IV of this opinion.

II

The second claim raised by the defendant is that the trial court improperly found no evidence that the arbitrator considered the loss to union members, individually or collectively, that resulted from the plaintiff's breach of the agreement. We agree with the defendant. "Where the submission is unrestricted, the award is final and binding and cannot be reviewed for errors of law or fact. *Roraback* v. *Travelers Ins. Co.*, 4 Conn.

App. 21, 23, 492 A.2d 208 (1985)." *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, supra, 5 Conn. App. 64. Therefore, the trial court may not review the arbitrator's report for errors of fact to determine what evidence she did or did not rely on.

## III

The defendant's third claim is that the trial court improperly concluded that the award of damages was punitive. Part two of the arbitrator's award states: "The [plaintiff] shall deposit . . . the sum of $1.3 million . . . for each twelve-month period (prorated) subsequent to July 1, 1991, during which the health benefit plans unilaterally implemented by the City remain in effect. After deducting its costs, including reasonable *attorneys' fees* and expert fees, [the defendant] shall divide the funds among the bargaining unit members, retirees and survivors . . . ." (Emphasis added.) The trial court could reasonably have ruled that the arbitrator's words clearly indicate that she intended to compensate the defendant, by way of her award, for attorney's fees.

The case before this court is one alleging breach of a collective bargaining agreement. Breach of a collective bargaining agreement sounds in contract. See *Barnett* v. *Board of Education*, 232 Conn. 198, 208, 654 A.2d 720 (1995). "In an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed." *Lar-Rob Bus Corp.* v. *Fairfield*, 170 Conn. 397, 404–405, 365 A.2d 1086 (1976).[5] Such damages are known as compensatory damages.

---

[5] "Punitive damages are not ordinarily recoverable for breach of contract. Restatement, 1 Contracts § 342; 5 [J.] Corbin, Contracts § 1077; [C.] McCormick, Damages § 81. This is so because, as lucidly [reasoned] by Professor Corbin in the passage cited, punitive or exemplary damages are assessed

The arbitrator acknowledged that the loss to the defendant's members is the difference between the level of care and the cost of that care provided to them before July 1, 1991, and the level and cost of care after that date. Indeed, the appellate courts of this state have defined consequential damages as "special damages [that] result from the *natural* consequences of the act complained of . . . . *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 223 n.16, 477 A.2d 988 (1984)." (Emphasis in original; internal quotation marks omitted.) *Chris Construction Co.* v. *May Centers, Inc.*, 23 Conn. App. 453, 457, 581 A.2d 748 (1990). The arbitrator made no effort to calculate the damages of the union members because, in her opinion, it was too difficult.[6] It is "well established that an award of nominal damages is appropriate where there is insufficient evidence produced at trial to prove actual damages. See, e.g., *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 477, 590 A.2d 431 (1991)." *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 424, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996).[7]

The arbitrator's award permits the defendant to pay attorney's fees from the monetary award. In Connecticut, an award of attorney's fees is an element of punitive

by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contract relationship. *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 47–48, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986)." (Internal quotation marks omitted.) *Barry* v. *Posi-Seal International, Inc.*, 40 Conn. App. 577, 584, 672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996).

[6] The plaintiff offered to give the members six months to prove their individual losses but the arbitrator found "that would place an unfair onus on employees to document losses."

[7] " 'Nominal damages are usually fixed at one cent, one dollar, or some similar small amount. . . . While no exact standard has been fixed as to what amount should be given as nominal damages, it must be "insubstantial," a few cents or dollars.' [C.] McCormick, Damages [1935] § 21, p. 87." *Connecticut Employees Union "Independent," Inc.* v. *Connecticut State Employees Assn., Inc.*, 183 Conn. 235, 252, 439 A.2d 321 (1981).

damages. See *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). Punitive damage awards are not ordinarily available in a contract action unless tortious conduct that is malicious, wilful or reckless is alleged. See *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 127–28, 222 A.2d 220 (1966); *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 47–48, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). The defendant has made no claim that the plaintiff's becoming self-insured was malicious, willful or reckless. Therefore, the trial court properly determined that the arbitrator's award was punitive.

## IV

The plaintiff argues that because the second part of the arbitrator's award of $1,300,000 per twelve month period, including costs and attorney's fees, was punitive, the award violates public policy, which prohibits the imposition of punitive awards against a municipality and, therefore, the trial court's judgment vacating the award should be affirmed. The plaintiff claims that by making an award that violates public policy, the arbitrator exceeded her powers or so imperfectly executed them that a mutual, final and definite award was not made. See General Statutes § 52-418. We agree with the plaintiff.

"In the overwhelming majority of jurisdictions which have considered [whether a municipality is liable for punitive damages], it is now firmly established that exemplary or punitive damages are not recoverable unless expressly authorized by statute or through statutory construction . . . . In denying punitive or exemplary damages, most courts have reasoned that while the public is benefited by the exaction of such damages against a malicious, willful or reckless wrongdoer, the benefit does not follow when the public itself is penalized for the acts of its agents over which it is able

to exercise but little direct control." 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1993) § 53.18.10, p. 247.[8] "Punitive damages is a sanction reserved to the State, a public policy of such magnitude as to call for judicial intrusion to prevents it contravention. Since enforcement of an award of punitive damages as a purely private remedy would violate strong public policy, an arbitrator's award which imposes punitive damages should be vacated." *Garrity* v. *Lyle Stuart, Inc.*, 40 N.Y.2d 354, 356, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976). We agree.

"In the United States, the general rule of law known as the American Rule is that a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of [its] damages or costs. . . . There are certain exceptions to this rule. . . . In the main, exceptions are based upon statutory or contract provisions authorizing the recovery of attorney's fees by a prevailing litigant." (Internal quotation marks omitted.) *Raph* v. *Vogeler*, 45 Conn. App. 56, 65, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997). The defendant has not identified any statutory or contractual provision permitting the arbitrator to award it attorney's fees in this matter.[9]

The plaintiff, on the other hand, has identified statutes that support its claim that punitive awards against municipalities are contrary to public policy. "In arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the

---

[8] See also *Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Genty* v. *Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991); *Michaud* v. *Bangor*, 160 Me. 285, 203 A.2d 687 (1964); *Staudacher* v. *Buffalo*, 155 App. Div. 2d 956, 547 N.Y.S.2d 770 (1989); *Haefner* v. *Apcoa Parking, Inc.*, 130 Misc. 2d 203, 500 N.Y.S.2d 605 (1986).

[9] We note that the arbitrator's award permits the defendant to deduct costs from the award, which conflicts with the provisions of § 3.5.6. (c) of the agreement, which provides: "The cost of AAA shall be split equally between the parties . . . ."

municipal employer, including consideration of other demands on the financial capability of the municipal employer. . . ." General Statutes § 7-473c (d) (2). The defendant does not dispute that the plaintiff's becoming self-insured was the result of a severe fiscal crisis and a large projected budget deficit. An award of damages punitive in nature is contrary to the public policy stated in § 7-473c (d) (2). Therefore, the trial court properly vacated the arbitration award. When an arbitration award is vacated pursuant to § 52-418, the trial court cannot properly confirm an award. See General Statutes § 52-417.

The judgment is affirmed.

In this opinion the other judges concurred.