[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S APPLICATION TO VACATE ARBITRATION AWARD #101 DEFENDANT'S APPLICATION TO CONFIRM ARBITRATION AWARD #103
The plaintiff, Samuel V. Schoonmaker, III, filed an application in this court to vacate the arbitration award dated May 29, 1998, which denied the plaintiff's request for benefits. The, defendants, Cummings Lockwood of Connecticut, P.C. ("CL of Connecticut, P.C.") and the law firm of Cummings and Lockwood ("CL") (collectively "defendants"), filed an application to confirm the arbitration award.
The plaintiff is an attorney who was employed by the defendants for approximately thirty-five years. During his employment at CL, the plaintiff served as Managing Partner and was the chairman of CL's matrimonial law group.
As a partner at CL and a shareholder in CL of Connecticut, P.C., the plaintiff was subject to their Partnership Agreement and their Employment Agreement. Both agreements provide benefits upon retirement from the firm. The agreements provide for two types of benefits. The first, known as the basic "1x" benefit, is payable to one who has been a partner and/or employee of the firm for at least forty-eight (48) months. The second type, known as CT Page 15620 the "2x" benefit, provides for the supplemental benefit upon the retirement of an employee who has served for at least twenty (20) years, and has reached the age of sixty (60) or has become physically or mentally incapacitated to continue the practice of law. (Employment Agreement, ¶¶ 8(b) and (c); Partnership Agreement, ¶¶ 12(B) and (C).) The agreements provide that both the basic and supplemental benefits are conditioned upon a non-competition provision. (Employment Agreement, ¶ 10; Partnership Agreement, ¶ 13.) The non-competition clause requires that the retiring employee not practice law for three years in the counties of Fairfield, New Haven and/or Hartford, Connecticut, and three designated counties in Florida.
In 1996, the plaintiff left the defendants' law firm and opened a law office, specializing in matrimonial law, in Greenwich, Connecticut. Although the plaintiff violated the non-competition provision, he requested retirement benefits. The defendants refused on the ground that the plaintiff "practiced law in Fairfield County within three years of his `retirement' from Cummings and Lockwood in violation of the forfeiture upon competition provision in the firm's agreements." (Application to Vacate Arbitration Award, ¶ 4.)
On February 28, 1998, the plaintiff commenced an arbitration proceeding against the defendants seeking a declaratory judgment that he receive his retirement benefits "because the forfeiture upon competition provisions in the firm's agreements violate Rule 5.6(a) of the Connecticut Rules of Professional Conduct,[1]
and therefore, are void as against public policy." (Id., ¶ 5) On May 28, 1998, the arbitrator denied the plaintiff's request for benefits. See Arbitration Award and Opinion, dated May 28, 1998.
The arbitrator focused on the interpretation of the retirement exception to Rule 5.6(a). The arbitrator held that "an objective test may be used to determine whether a given agreement is within the scope of the retirement exception." (Id., p. 4.) The arbitrator determined that "the 2x benefit complies with the dictates of Rule 5.6(a)." (Id., p. 8.) The arbitrator then utilized the agreements' "Savings Clause," which allowed him to "construe the relevant agreement `(and to whatever extent is necessary is hereby empowered and directed to reform [the agreement] to incorporate any other additional conditions or criteria required) so as to preserve the validity of the non-competition condition . . . and to provide benefits to the partners upon their retirement.'" (Alterations in original.) CT Page 15621 (Id., 9.)
As a result of the Savings Clause, the arbitrator modified the 1x benefit to make it enforceable under Rule 5.6(a). "Since I have concluded that the 2x is enforceable, making the 1x available only under the same circumstances that the 2x is available — upon attaining age 60 and after twenty years service with the firm — is sufficient to render the 1x enforceable as well." (Id., 13.)
The arbitrator determined that it was "[t]he good faith agreement of the parties — including claimant [Schoonmaker] — to adopt a provision in order to comply with the uncertain provisions of an ethical rule [and] should not lightly be cast aside." (Id., 11.) Furthermore, the arbitrator determined that the plaintiff, as managing partner of CL, was instrumental in recommending the savings clause to the partners in order to comply with the ethical rule. The arbitrator found that "[t]wo of the firm's partners had brought a claim challenging the firm's noncompete when the claimant was one of the firm's two comanaging partners . . . [and] claimant took the position that the noncompete should be enforced because he believed that such an action was necessary to keep other partners from leaving the firm. Further, claimant later — apparently when he was sole managing partner — asked . . . whether there was any way to remove all doubts about the validity of the retirement plan and the noncompetes — a request that appears to have set in motion a chain of events that led to the adoption of the savings clause . . . [T]here appears to be no dispute that the adoption of [the savings] clause arose as a result of claimant's desire to have an enforceable noncompete in the retirement program, and that as managing partner he recommended its adoption to the firm." (Id., 12-13.) The arbitrator held that the savings clause did not violate either Rule 5.6(a) or public policy.
After relinquishing his position as managing partner, and after termination of his employment with the firm, the plaintiff argues that the noncompete clause, the very clause he advocated for adoption, violates public policy. The arbitrator held otherwise and issued an award and opinion denying the plaintiff's request for benefits.
The plaintiff filed an application to vacate the arbitration award stating that the award "violates Rule 5.6(a) of the Rules of Professional Conduct and is contrary to the public policy of CT Page 15622 this state." (Application to Vacate Arbitration Award, ¶ 8.) The defendants filed an application to confirm the arbitrator's award stating that "[t]he arbitrator's findings of fact, legal analysis, and conclusions are based upon a thorough and reasonable interpretation of the legal and factual issues in this case, and the award does not violate public policy." (Application to Confirm Arbitration Award, ¶ 14.) Both parties have submitted memoranda of law and reply memoranda of law in support of their respective positions.
Connecticut arbitration legislation is embodied in General Statutes §§ 52-408 through 52-424. Section 52-408 of the General Statutes gives contracting parties the power to agree to submit any controversy arising out of their contract to arbitration. The parties in this case have agreed, in their Employment Agreement and Partnership Agreement, to submit any controversy arising out of their agreements to arbitration. After arbitration is complete and the opinion and award have been rendered, application may be made to the Superior Court for an order confirming or vacating the award. General Statutes §§ 52-417 and 52-418, respectively.
"Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted; internal quotation marks omitted.) United States Fidelity Guaranty Co. v. Hutchinson,244 Conn. 513, 519, 710 A.2d 1343 (1998).
"Arbitration awards are generally upheld and [the reviewing court gives] deference to an arbitrator's decision since it is favored as a means of settling disputes." Bridgeport v.Connecticut Police Department Employees, 32 Conn. App. 289, 292,628 A.2d 1336, cert. denied, 227 Conn. 925, 632 A.2d 703 (1993). "This court has long endorsed arbitration as an alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) New Haven v. AFSCME, Council 15, Local530, 208 Conn. 411, 415, 544 A.2d 186 (1988); see WatertownPolice Union Local 541 v. Watertown, 210 Conn. 333, 338,555 A.2d 406 (1989) ("we have consistently stated that arbitration is the favored means of settling differences and arbitration awards are CT Page 15623 generally upheld").
"Every reasonable presumption will be made in order to sustain an award." Bridgeport v. Connecticut Police DepartmentEmployees, supra, 32 Conn. 293. "The scope of review by the court of an arbitrator's power to make an award is limited . . . The parties themselves, by the agreement of the submission, define the powers of the arbitrator . . . The submission constitutes that charter of the entire arbitration proceedings and defines and limits the issues to be decided . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits . . . An application to vacate or correct an award should be granted when an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission." (Internal quotation marks omitted.) City of Hartford v. International Association ofFirefighters, Local 760, 49 Conn. App. 805, 811-12, 717 A.2d 258, cert. denied, 247 Conn. 920, (1998).
"In determining whether a submission is unrestricted we look at the authority of the arbitrator. The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of the issues reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.)City of Norwalk v. AFSCME Council 16, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 142159 (May 26, 1995) (Karazin, J.); see also Bodner v. United ServicesAutomobile Association, 222 Conn. 480, 487-91, 610 A.2d 1212
(1992); City of Hartford v. International Association ofFirefighters, Local 760, supra, 49 Conn. App. 812. In this case, the submission is unrestricted. (Employment Agreement, ¶ 15; Partnership Agreement, ¶ 17.)
Even where a submission is unrestricted, however, an award may be vacated on three grounds, if: "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes §] 52-418." (Citations omitted.) Garrity v. McCaskey, 223 Conn. 1, 6,612 A.2d 742 (1992). The plaintiff, in this case, seeks to vacate the arbitration award on public policy grounds. CT Page 15624
"A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such contract between them . . . When a challenge to the arbitrators' authority is made on public policy grounds, the court is not concerned with the correctness of the arbitrators' decision, but with the lawfulness of enforcing the award." (Citations omitted; internal quotation marks omitted.) City ofHartford v. International Association of Firefighters, Local 760, supra, 49 Conn. App. 813.
"[T]he public policy exception to arbitral authority should be narrowly construed and a court's refusal to enforce an arbitrator's interpretation of [a collective bargaining agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant." (Internal quotation marks omitted.) City of Hartfordv. International Association, Firefighters, supra,49 Conn. App. 812-13; Watertown Police Union Local 541 v. Watertown, supra,219 Conn. 340; see also State v. Council 4, AFSCME,27 Conn. App. 635, 640, 608 A.2d 718 (1992).
"The party challenging an arbitration award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. We make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Internal quotation marks omitted.) New Haven v.AFSCME, Council 15, Local 530, supra, 208 Conn. 417; see alsoWatertown Police Union Local 541 v. Watertown, supra,210 Conn. 340 (refusing to vacate the arbitrator's award since "the plaintiff has no explicit public policy on which to rely").
"[T]he appropriate standard of review requires the court to review carefully the arbitration panel's award in the context of the underlying public policy, and if the panel has identified, defined and attempted to vindicate pertinent public policy the court should not disturb the award merely because the award is imperfect, or because the award's resolution of the public policy in question is reasonably debatable." Zeldes, Needle Cooper v.Shrader, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 337355, CONN. L. RPTR. 629 (October 10, 1997) (Stevens, J.).[2] The plaintiff argues that the noncompete provision in the agreements violate Rule 5.6(a) of the Rules of Professional CT Page 15625 Conduct. The plaintiff also argues that such a provision violates the public policy that provides freedom of clients to choose a lawyer. "Schoonmaker contends that the arbitration award should be set aside as contrary to the public policy underlying Rule 5.6(a), because the award's enforcement of a forfeiture upon competition provision has the effect of limiting the access of clients to an attorney who had not retired from the practice of law." (Plaintiff's Memorandum of Law in Support of Application to Vacate Arbitration Award, p. 9.) The plaintiff argues that "[t]he Official Comment to the Rule expressly provides that restrictions on a lawyer's right to practice after leaving a firm limit the `freedom of clients to choose a lawyer.'" (Id.) However, it should be noted that there is also an express exception to Rule 5.6(a) which provides that an agreement restricting the right of a lawyer to practice after leaving the firm is not prohibited when the agreement concerns "benefits upon retirement."[3]
The defendants argue that great deference should be given to an arbitrator's decision so long as it was lawful. See WatertownPolice Union Local 541 v. Watertown, supra, 210 Conn. 339-40. They further argue that an arbitration award should only be vacated when the award is illegal or violative of public policy. The defendants argue that "no public policy is offended by the arbitrator's finding . . ." (Defendants' Memorandum of Law in Support of Application to Confirm Arbitration Award and in Opposition to Plaintiff's Application to Vacate, p. 19.) They argue that "the arbitrator's Opinion and Award contains a thorough analysis of the public policy issues implicated by Rule 5.6(a). The arbitrator carefully considered and rejected Schoonmaker's contention that Rule 5.6(a)'s underlying policy of promoting client choice is best served by awarding Schoonmaker his benefits." (Id., 23.)
In this case, the arbitrator did identify, define and attempt to vindicate the underlying public policy of Rule 5.6(a). SeeZeldes, Needle Cooper v. Shrader, supra, Superior Court, Docket No. 337355. The arbitrator held that "any construction of the Rule that permits retirement benefits to be conditioned on a noncompete will have some effect on client choice." (Arbitration Opinion and Award, pp. 5-6.) The arbitrator further held that "while promoting client choice may have been recognized as the primary purpose of the rule, it is not the Rule's only purpose . . . [T]here is no doubt that the Rule is designed to permit attorneys to have retirement plans that have noncompetition conditions — there is simply no other CT Page 15626 explanation for the exception to the Rule." (Id., pp. 6-7.) Therefore, there is no violation of "some explicit public policy that is well defined and dominant." City of Hartford v.International Association of Firefighters, Local 760, supra,49 Conn. App. 812-13.
Since the public policy exception must be narrowly construed, giving great deference to the arbitrator's decision, the award should be upheld. See Id.; Bridgeport v. Connecticut PoliceDepartment Employees, supra, 32 Conn. App. 292. The arbitrator carefully considered the public policy argument set forth by the plaintiff, and reached the conclusion that the agreements at issue do not violate the public policy underlying Rule 5.6(a), and that the plaintiff is not entitled to benefits. Therefore, this court will not upset the arbitrator's fact finding and legal conclusions and the arbitration opinion and award is hereby confirmed.
Karazin, J.